## STATE *v.* MARSHALL.
### SLAYTON *v.* SAME.

A statute prohibiting the sale of imitation butter unless colored pink, has for its object the prevention of fraud on the public in the sale of provisions, and is therefore within the purview of the police power of the state.

A complainant, under a statute imposing a fine, cannot recover in an action of debt that portion of the fine to which, by the terms of the statute, he may be entitled.

The first case is an INDICTMENT, upon chapter 68 of the Laws of 1885, for selling oleomargarine, an article made in imitation of butter, not wholly from milk or cream, and being of another color than pink.

The second case is an action of DEBT, to recover the fine of $50 prescribed in the statute for selling the same article, one half for the use of the county.

*Sulloway & Topliff,* for the defendant. The offence charged is solely that of selling an article of food proper to be sold and used, because, as alleged, it is of another color than pink,—there being no sanitary objection to the unrestricted manufacture, sale, and use of the substance. The statute is not a quarantine or police regulation, nor is it an act to prevent a nuisance. It is not to prevent the use of dangerous or unwholesome food, nor is it an enactment to fix a standard of purity. It is, in fact, an attempt to prevent the use of a wholesome, nutritious, valuable, cheap article of food by subjecting the consumer and his table to ridicule and disgrace. The right of acquiring, possessing, and protecting property is asserted in the Bill of Rights as a natural right. It is not established by any fallible authority, measured by any precedent, or restricted by any arbitrary dogma. The natural right is now reinforced by the constitutional guaranty. *Aldrich* v. *Wright*, 53 N. H. 400. The law will not allow the rights of property to be invaded under the guise of a police regulation for the promotion of health, when it is manifest that such is not the object and purpose of the regulation. *Slaughter-House Cases,* 16 Wall. 36–87. The power of a legislature to suppress a trade and forbid the use of private property is limited to those which are, in fact, unwholesome, dangerous, immoral, necessarily and inherently noxious to the public welfare. This power must be actually born of the public necessity, must be only addressed to the public welfare. It must be and can only be applied to those things which really clash with this necessity and welfare, and only to the extent wherein they clash. The legislature is the sole judge whether it will exercise the power upon the

proper subject-matter in the given necessity. But whether an enactment is in fact an exercise of this power, informed with that public purpose, addressed to that public necessity, applied to a matter actually within its range and operation, is a question for the judicial department.

*R. M. Wallace*, solicitor, for the state.

*Burnham & Brown*, for Slayton.

CLARK, J. The indictment in the first case, and the action of debt in the second case, are founded upon chapter 68, Laws of 1885, which provides that "Whoever by himself or his agent shall sell, expose for sale, or have in his possession with intent to sell, any article or compound made in imitation of butter or as a substitute for butter, and not wholly made from milk or cream, and that is of any other color than pink, shall for every package that he or they sells or exposes for sale, forfeit and pay a fine of fifty dollars, . . . ." The defendant demurs, raising the question of the constitutionality of the statute, and of the form of the remedy, if any. The defendant contends that the legislature has no constitutional authority to compel him to color an article of food which is wholesome and nutritious with a foreign substance, in a manner that subjects it to ridicule and degrades it in the eyes of the public, thereby depriving him of his constitutional right to carry on a lawful industrial pursuit.

The constitutionality of a legislative act is to be presumed, and a statute is not to be held unconstitutional unless a clear and substantial conflict exist between it and the constitution. *Rich* v. *Flanders*, 39 N. H. 304. The question whether a statute is constitutional or not is a question of legislative power. Cooley Const. Lim. (3d ed.) 186. Whether it be wise, reasonable, or expedient, is a legislative and not a judicial question. The legislature is as capable of determining the question of the wisdom, reasonableness, and expediency of a statute, and of the necessity for its enactment, as the courts. The only inquiry is whether the statute conflicts with the constitution.

By article 5 of part 2 of the constitution of the state, the legislature is authorized "to make, ordain, and establish all manner of wholesome and reasonable orders, laws, statutes, ordinances, directions, and instructions, either with penalties or without, so as the same be not repugnant or contrary to this constitution, as they may judge for the benefit and welfare of this state and for the governing and ordering thereof and of the subjects of the same." Under this grant the power of the legislature to regulate the sale of articles of food, and to legislate for the prevention of adulteration, deception, and fraud in the sale of provisions, is unquestioned. The enactment of laws for the protection of the public from fraud and deception in articles of food in common and general use is a legit-

imate exercise of the police power of the state by the legislature. The statutes requiring the inspection of flour, beef, pork, butter, lard, and fish (G. L., cc. 125–129) are of this class, and the statutes regulating the sale of milk (Laws of 1883, c. 42), the sale and offering for sale of bread, pressed hay, cord-wood, commercial fertilizers, and illuminating oils (G. L., c. 122), and the prevention of adulterations (G. L., c. 271), are founded upon the same principle,—the protection of the public from imposition and fraud. Such legislation is clearly within the scope of legislative authority conferred by the constitution. "A fraud is, of course, a trespass upon another's private rights, and can always be punished when committed. It is, therefore, but rational to suppose that the state may institute every reasonable preventive remedy, when the frequency of the frauds, or the difficulty experienced in circumventing them, is so great that no other means will prove efficacious. Where, therefore, police regulations are established which give to private parties increased facilities for detecting and preventing fraud, as a general proposition, these laws are free from all constitutional objections." Tiedeman Lim. Police Power 207.

The statute under consideration is entitled "An act relating to the sale of imitation butter," and it prohibits the sale of imitation butter as genuine. The purpose and intent of the statute being the protection of the public against imposition, it is within the constitutional power of the legislature to enact it. The demurrer admits that oleomargarine is within the prohibition of the statute, although not specially named in it, and that it is an article or compound made not wholly from milk or cream, in imitation of butter, and as a substitute for butter. The design of the act is to protect purchasers and consumers against deception, and this is accomplished by requiring the article sold or offered for sale as a substitute for butter to be of a pink color, to show that it is not genuine butter. The sale of oleomargarine is not prohibited. The prohibition is against the sale or exposing for sale of any article or compound made in imitation of butter or as a substitute for it, and not made wholly from milk or cream, of any other color than pink to designate its true character. Butter is a necessary article of food, of almost universal consumption; and if an article compounded from cheaper ingredients, which many people would not purchase or use if they knew what it was, can be made so closely to resemble butter that ordinary persons cannot distinguish it from genuine butter, the liability to deception is such that the protection of the public requires those dealing in the article in some way to designate its real character. It being within the constitutional power of the legislature to establish regulations for the prevention of fraud in the sale of articles of food, it is generally for the legislature to determine what regulations are needed for that purpose. Cooley Const. Lim. (3d ed.) 168. And it cannot be held as matter of law that it is not within the constitutional limits of legisla-

tive discretion to require imitation butter, when sold or exposed for sale, to be colored a pink color to designate its real character, and thereby prevent deception and fraud.

The prohibition of the statute being directed against imposition in selling or exposing for sale artificial compounds resembling butter in appearance and flavor, and liable to be mistaken for genuine butter, it is no defence that the article sold or exposed for sale is free from impurity and unwholesome ingredients, and healthy and nutritious as an article of food. The legislature, in the exercise of the police power, for the purpose of preventing fraud, may prohibit the sale of pure milk mixed with pure water, or below a certain standard, and such regulation is no invasion of constitutional rights. *State* v. *Campbell*, 64 N. H. 402; *Commonwealth* v. *Evans*, 132 Mass. 11; *State* v. *Smyth*, 14 R. I. 100; *People* v. *Cipperly*, 101 N. Y. 634; *People* v. *West*, 106 N. Y. 293. Similar statutes have been held constitutional in other jurisdictions. *State* v. *Addington*, 77 Mo. 110; *Butler* v. *Chambers*, 36 Minn. 69; *Powell* v. *Commonwealth*, 114 Penn. St. 265; *People* v. *Arensberg*, 105 N. Y. 123.

The demurrer also raises the question as to the form of the remedy. The statute declares that the offender shall "forfeit and pay a fine of fifty dollars, and for a second and each subsequent offence a fine of one hundred dollars, to be recovered with costs in any court of this state of competent jurisdiction; and any fine so recovered and paid shall go one half to the complainant and one half to the county where the offence was committed." It provides a fine for its violation. "Fines are imposed by the sentence of a court of criminal jurisdiction, in a prosecution commenced by indictment or information, or upon complaint before a justice." G. L., c. 268, s. 1. In the absence of any special provision as to the mode of procedure, the use of the word fine determines the form of the remedy.

By c. 211, s. 4, of the Revised Statutes, it was provided that "All fines imposed by any statute may be recovered by information or indictment if no other mode of recovery is specially provided." In the revision of 1867, s. 1 of c. 250, Gen. Sts. (G. L., c. 268, s. 1), was enacted, giving a definition of a fine which includes the mode of its recovery, and the provision that all fines imposed by any statute may be recovered by information or indictment if no other mode of recovery is specially provided, was omitted, being unnecessary, as the use of the word fine in a statute determines the form of the remedy unless otherwise provided. Instances are found in the statutes where by special provision a fine is recoverable in an action of debt (G. L., c. 122, s. 26); and by an action of debt or by information or indictment (G. L., c. 158, s. 12); and a pecuniary forfeiture by indictment (G. L., c. 272, s. 18; c. 146, s. 4); but in the absence of such special provision, pecuniary forfeitures are recovered by an action of debt, and fines by information, indictment, or complaint.

In the action of debt the demurrer is sustained as to the form of the remedy.   The demurrer to the indictment is overruled.

*Case discharged.*

SMITH, J., did not sit: the others concurred.