STATE *ex rel.* FRED. WEIDEMAN *vs.* FRANK HORGAN.

Argued by appellant Nov. 1, 1893. No appearance by respondent. Reversed Nov. 8, 1893.

No. 8414.

**The Oleomargarine acts constitutional.**

The provisions of Laws 1891, ch. 11, "An act relating to the sale of imitation butter," are valid as a legitimate exercise of the police powers of the state.

**Sale of imitation butter is a misdemeanor subjecting to arrest.**

The offense prohibited in section 1 of said Act is a misdemeanor, and the penalty therein specified is to be recovered in accordance with the provisions of 1878 G. S. ch. 78, § 10, by a criminal prosecution in a court of competent jurisdiction.

Appeal by Frank Horgan, a police officer of the City of Duluth, from an order of the District Court of St. Louis County, *J. D. Ensign*, J., made June 14, 1893, discharging the relator, Fred Weideman, from his custody.

On May 23, 1893, John M. Bohrer made complaint on oath in the Municipal Court of the City of Duluth that Fred Weideman did on May 10, 1893, in that City unlawfully sell oleomargarine to E. J. Graham, of another color than bright pink, contrary to Laws 1891, ch. 11. A warrant was issued and delivered to policeman, Frank Horgan to execute. He arrested Weideman June 6, 1893, and was about to take him into the Municipal Court. Weideman presented his petition or relation to the District Court and obtained a writ of Habeas Corpus commanding Horgan to have the body of Weideman with the time and cause of his detention before the District Court, to do and receive what should there be considered concerning said Weideman.

The policeman, Horgan, made return that he held Weideman under and by virtue of the warrant from the Municipal Court. After hearing the parties, the Court of June 14, 1893, made an order discharging Weideman from custody. From that order this appeal is taken.

*H. F. Greene* and *A. H. Crassweller*, for appellant.

The violation of this law was a criminal offence. *State* v. *West*, 42 Minn. 147; *State* v. *Cotton*, 29 Minn. 187; *Dawson* v. *St. Paul F. & M. Ins. Co.*, 15 Minn. 136; *State* v. *Marshall*, 64 N. H. 549.

There was no appearance for respondent.

COLLINS, J. In their brief herein, counsel for the appellant discuss two questions: First, the constitutionality of the act for a violation of which the relator, Weideman, was arrested, entitled "An act relating to the sale of imitation butter," Laws 1891, ch. 11; and; Second, the method of procedure under the same.

Laws of this import, having in view the same general purpose, although relating, sometimes, to other articles, are nothing new in the legislation of this and other states. In other jurisdictions, so far as we are informed, they have uniformly been sustained as being within the police power of a state, and it is certain that they,

as well as others with more stringent provisions, have been upheld in this court. *Butler* v. *Chambers*, 36 Minn. 69, (30 N. W. Rep. 308;) *Stolz* v. *Thompson*, 44 Minn. 271, (46 N. W. Rep. 410;) *State* v. *Aslesen*, 50 Minn. 5, (53 N. W. Rep. 220.)

As to the views of other tribunals, see *Powell* v. *Pennsylvania*, 127 U. S. 678, (8 Sup. Ct. Rep. 992, 1257;) *State* v. *Addington*, 77 Mo. 110; *Powell* v. *Commonwealth*, 114 Pa. St. 265, (7 Atl. Rep. 913;) *People* v. *Arensberg*, 105 N. Y. 123, (11 N. E. Rep. 277;) *State* v. *Marshall*, 64 N. H. 549, (15 Atl. Rep. 210,) in which a statute almost identical with Laws 1891, ch. 11, was under consideration. There is no question whatever of the constitutionality of such legislation.

As we understand the position of the relator, (and we presume that it was upon this point that the District Judge ordered him to be released from custody,) the Municipal Court was without jurisdiction to issue a warrant for his arrest, but should have proceeded, and could only proceed, against him to recover the prescribed penalty as in a civil action. The statute provides (section 1) that "whoever by himself or agent shall sell, expose for sale or have in his possession with intent to sell any article or compound made in imitation of butter or as a substitute for butter and not wholly made from milk or cream and that is of any other color than bright pink, shall be subject to the payment of a *penalty* of fifty (50) dollars and for a second and each subsequent *offense* a *penalty* of one hundred (100) dollars, to be recovered with costs in any court of competent jurisdiction." We have purposely italicized certain words in the above quotations. In section 3, possession of the article or substance "prohibited" by the act is made *prima facie* evidence that the same is kept in "violation" thereof. Moneys derived from "fines" are to be paid into the state treasury, and in section 2 proceedings to enforce the provisions of the law are called "prosecutions."

It will thus be seen that the act forbidden is styled an "offense," the words "penalty" and "fine" are used interchangeably, the article or substance against which the legislation is directed is referred to as "prohibited," and also as kept in "violation" of the act, while proceedings to enforce its provisions are called "prosecutions." We think it very clear that the legislature contemplated the enactment

of a penal statute. By the Penal Code, § 3, a crime is defined as an act or omission forbidden by law, and, upon conviction, punishable by death or imprisonment or fine, or other penal discipline. By section 4, crimes are divided into felonies and misdemeanors, the latter embracing every crime not punishable by either death, or imprisonment in the state's prison. Now the selling of the article or substance mentioned in chapter 11, unless it be colored a bright pink, is an act forbidden by law; it is a public offense. Upon conviction, a pecuniary penalty is imposed, and this is nothing more or less than a fine, according to the lexicographers. The offense is a misdemeanor, and the penalty, or fine, is to be recovered in accordance with the provisions of 1878 G. S. ch. 78, § 10, by a criminal prosecution in a court of competent jurisdiction. To hold that the penalty can only be recovered in a civil action would in many instances nullify the law, and enable the impecunious to defy it, and its consequences when violated, with impunity.

Reference has been made to a New Hampshire statute as almost identical with that under consideration, and passed upon in *State* v. *Marshall, supra.* There is practically no difference in the language, but in New Hampshire the word "fine" was used where the word "penalty" appears in the act of 1891. We have no doubt that our statute was copied from that considered and construed in *State,* v. *Marshall* in 1888, and in that case this same question was raised, among others. It was held that, in the absence of any special provision, the word "fine" determined the remedy, and that it was by a prosecution in the criminal courts. It might possibly be suggested, in view of the fact that the law of 1891 was adopted from another state, after it had been construed in 1888, that there is a deep significance in the use of the word "penalty" instead of the word "fine." If it had been intended by our legislature to so radically change the method of procedure from that already determined as proper by the courts of New Hampshire as to render it a civil action instead of criminal, the statute would have spoken upon the subject with no uncertain sound.

Order reversed.

BUCK, J., took no part in this case.

(Opinion published 56 N. W. Rep. 688.)