# CHARLESTON.

## STATE *v.* MYERS.

Submitted June 4, 1896—Decided December 16, 1896.

CONSTITUTIONAL LAW—ADULTERATED FOOD—OLEOMARGARINE.

Chapter 8 of the Acts of 1891, providing that from and after its passage it shall be unlawful for any manufacturer or vendor of oleomargarine, artificial or adulterated butter, to manufacture or offer for sale within the limits of this state any oleomargarine, artificial or adulterated butter, whether the same be manufactured within or without this state, unless the same shall be colored pink, and prescribing a penalty for the violation of the same, *held* to be not unconstitutional.

W. W. ARNETT for plaintiff in error.

T. S. RILEY, ATTORNEY-GENERAL, and WHITE & ALLEN for defendant in error.

WHITE & ALLEN cited 127 U. S. 683; 15 L. R. A. 839; 156 Mass. 242; 64 N. H. 402, 549; 132 Mass. 11; 101 N. Y. 634; 106 N. Y. 293; 105 N. Y. 123; 56 N. W. (Minn.) 688; 20 Atl. Rep. 143; 152 U. S. 133; 18 Am. & Eng. Enc. Law, 748.

ENGLISH, JUDGE:

On the 5th day of September, 1891, Elgie Myers was arrested on the warrant of a justice of the peace of Ohio county charging him with being a vendor of oleomargarine, artificial or adulterated butter, and that he did, on the 5th day of September, 1891, in said county, offer for sale within the limits of this state oleomargarine, artificial or adulterated butter, without the same being colored pink. On the 7th day of October, 1891, a judgment was rendered by said justice assessing a fine of twenty dollars against said Myers, and taxing the costs against him at twelve dollars and seventy cents.

From this judgment an appeal was taken to the circuit court of said county, which appeal was heard on the 21st of January, 1893, by the court in lieu of a jury, and the defendant, Elgie Myers, was found guilty as in said warrant was charged, and the judgment of said justice was affirmed, and judgment rendered for the sum of twenty dollars assessed as aforesaid, and for the costs of the appeal in the circuit court as well as for the costs that accrued before the justice. On the 21st day of January, 1893, the defendant moved the court to set aside its finding and the judgment rendered therein, and grant him a new trial, which motion was overruled by the court, and the defendant excepted.

The facts agreed were: "That the defendant was a vendor of oleomargarine, and that about September, 1892, received from Chicago, Ill., certain packages containing oleomargarine; that he broke these packages, offered for sale and sold in small quantities in the markets of the city of Wheeling, Ohio county, West Virginia, the eleomargarine therein contained; and that no portion thereof was colored pink."

It is claimed on the part of plaintiff in error that the court erred in finding him guilty, and rendering judgment against him, upon the facts agreed, because the legislature exceeded its constitutional power in enacting the statute which requires that oleomargarine shall not be sold, *etc.*, until or unless the said oleomargarine should have been colored pink; and that said statute is unconstitutional, null, and void, because

the legislature has no police or other power to enact said statute. Sections 1, 2, and 3 of chapter 8 of the Acts of 1891, the constitutionality of which are brought in question, read as follows:

"Section 1. That from and after the passage of this act, it shall be unlawful for any manufacturer or vendor of oleomargarine, artificial or adulterated butter, to manufacture or offer for sale within the limits of this state, any oleomargarine, artificial or adulterated butter, whether the same be manufactured within or without the state, unless the same shall be colored pink.

"Sec. 2. Any person violating any provision of this act, shall be guilty of a misdemeanor and upon conviction thereof be fined not less than twenty nor more than one hundred;dollars for each offence.

"Sec. 3. Any penalty arising under this act may be enforced by any magistrate within the county in which the offence occurs."

Now the evident intention of this statute is to protect the citizens of the state and the public generally from imposition and fraud in the manufacture and sale of an article of everyday use and consumption. We have on our statute books provisions for the prevention of fraud in the sale of fertilizers to the farmer requiring that its chemical qualities shall be tested before it is thrown upon the market; also as to the quality of petroleum which is required to be inspected, graded, and measured before the same is transported, with a view of ascertaining its quantity and grade or gravity before it is allowed to go into the markets, with a view of preventing injury from its ignition or explosion; and, indeed, it is difficult to conceive of any higher object or more imperative duty which devolves upon the legislature than to guard the citizens of the state from impositions occasioned by the adulteration of articles of food or other articles of everyday use. Tiedman, in his valuable work on Limitations of Police Power, on page 207, section 89, under the caption "Regulation of Sale of Certain Articles of Merchandise," says: "The regulations which would fall under this heading are very numerous, and most of them are free from all doubt in respect to their validity under our con-

stitutional limitations. They are instituted either for the purpose of preventing injury to the public, or thwarting all attempts of the vender to defraud the vendee. A regulation, whatever may be its character, which is instituted for the purpose of preventing injury to the public, and which does tend to furnish the desired protection, is clearly constitutional." The object of the manufacturer of oleomargarine is to produce an article as near as possible in appearance like genuine butter of good quality, with a view of disposing of the same in the market for the same price as butter manufactured from milk; and the object of the legislature in requiring it to be colored pink, instead of yellow, is to prevent this imposition. Cooley, Const. Lim. (3d Ed.) p. 186, speaking of inquiry into legislative motives says: "From what examination has been given to this subject, it appears that whether a statute is constitutional or not is always a question of power; that is whether the legislature in the particular case, in respect to the subject matter of the act, the manner in which its object is to be accomplished, and the mode of enacting it, has kept within the constitutional limits, and observed the constitutional conditions. In any case in which this question is answered in the affirmative, the courts are not at liberty to inquire into the proper exercise of the power. They must assume that the legislative discretion has been properly exercised. If evidence was required, it must be supposed that it was before the legislature when the act was passed; and if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be held equivalent to such finding."

The question presented by this record was before the supreme court of New Hampshire in the case of *State* v. *Marshall*, 64 N. H. 549 (15 Atl. 210) in which it was held that "a statute prohibiting the sale of imitation butter unless colored pink has for its object the prevention of fraud on the public in the sale of provisions, and is, therefore, within the purview of the police power of the state." This question was also before the United States Supreme Court in the case of *Powell* v. *Pennsylvania*, 127 U. S. 678 (8 Sup. Ct. 992, 1257) in which it was held that "the fourteenth

amendment to the constitution was not designed to interfere with the exercise of the police power by the state for the protection of health, the prevention of fraud, and the preservation of the public morals," and that "the prohibition of the manufacture out of oleaginous substances, or out of any compound thereof other than that produced from unadulterated milk, or cream from unadulterated milk, of an article designed to take the place of butter or cheese produced from pure unadulterated milk or cream, or cream from unadulterated milk, or the prohibition upon the manufacture of any imitation or adulterated butter or cheese, or upon the selling or offering for sale or having in possession with intent to sell the same as an article of food, is a lawful exercise by the state of the power to protect by police regulations the public health." The question was also before the court of appeals of New York in the case of *People* v. *Arensburg*, 105 N. Y. 123 (11 N. E. 277) and it was there held that: "The producers of butter from animal fats or oils, although the product may be wholesome, nutritious, and suitable for food, and so the manufacture and sale thereof may not be prohibited, have no constitutional right to resort to devices for the purpose of making their product resemble dairy butter, and the legislature has power to enact such laws as it may deem necessary to prevent the simulated article being put upon the market in such form or manner as to be calculated to deceive." In the case of *Butler* v. *Chambers* in the supreme court of Minnesota [36 Minn. 69 (30 N. W. 308)] the court, in its opinion, on pages 70 and 71 (36 Minn.) and pages 308, 309 (30 N. W.) says upon this question: "In 1881 the legislature passed an act entitled 'An act to regulate the traffic in oleomargarine.' Laws 1881, c. 133. This act provides that any person who shall knowingly sell, or offer for sale, any article or substance in semblance of butter, not the legitimate product of the dairy, made exclusively of milk and cream, but into the composition of which the oil or fat of animals, or melted butter, or any oil thereof, enters as a substitute for cream, in tubs, firkins, or other original packages, not distinctly, legibly, and durably branded, * * * shall be guilty of a misdemeanor, *etc.* It can not be doubt-

ed that the act of 1881 was a legitimate exercise of police power. The public may be protected by appropriate legislation against imposition in the purchase of articles of consumption; and, if, as we may assume, the prevalent compounds resembling butter in appearance and flavor, and put on the market as a substitute for it, and generally known as 'oleomargarine,' 'butterine,' *etc.*, are liable to deceive and mislead purchasers and consumers as to the real nature of the product, and especially if such preparations are made of unwholesome ingredients, then we think there may be sufficient reason why the legislature may, in its discretion, meet the evil sought to be remedied by provisions for the suppression of the manufacture and sale of such artificial compounds altogether." So in the case of *People* v. *McGann*, 34 Hun, 358, it was held that the legislature had power, by virtue of the police power vested in it, to pass an act prohibiting absolutely the manufacture and sale as an article of food any articles designed to take the place of butter or cheese produced from pure, unadulterated milk or cream of the same, and that such act was constitutional and valid.

If, then, the legislature has the power, under the police power vested in it, to prohibit the manufacture and sale of oleomargarine entirely, we can but conclude that under the same power it may place (as it has done in this state) some distinguishing mark upon it, to prevent deception and imposition in the sale of the same, even though it should have the effect of injuring the sale of the same in the markets; and we can not regard the act in question in this state as inhibited by any clause of the Constitution. The judgment complained of must be affirmed, with costs.

## ON REHEARING.

The plaintiff in error, in his brief filed upon the rehearing of this case, seeks to show that the part of the act of our legislature which has reference to and affects importers into the state as to unbroken bulks or "original packages" is clearly unconstitutional, and, if unconstitutional as to these, it is unconstitutional as to all the parties to whom it applies; in other words, that the sections of the act are not

severable; if a part is unconstitutional, the whole is unconstitutional, for the reason that no one could know that the legislature would have given their sanction to the part of the act that affects the citizen of the state without the clause or part of the act that denounces the penalty against importers of "original packages," and seeks to show that the case of *Plumley* v. *Massachusetts*, 155 U. S. 461 (15 Sup. Ct. 154) does not affect the case. In that case, however, this question is exhaustively considered by Justice Harlan, and the authorities fully collated. The first section of the syllabus in that case reads as follows: "The act of August 2, 1886, c. 840 (24 Stat. 209) does not give authority to those who pay the taxes prescribed by it to engage in the manufacture or sale of oleomargarine in any state which lawfully forbids such manufacture or sale, or to disregard any regulations which a state may lawfully prescribe in reference to that article; and that act was not intended to be, and is not, a regulation of commerce among the states;" and that the statute of Massachusetts of March 10, 1891 (chapter 58) 'to prevent deception in the manufacture and sale of imitation butter,' in its application to the sales of oleomargarine artificially colored so as to cause it to look like yellow butter, and brought into Massachusetts, is not in conflict with the clause of the Constitution of the United States investing congress with power to regulate commerce among the several states; also restraining the case of *Leisy* v. *Hardin*, 135 U. S. 100, 124 (10 Sup. Ct. 681) in its application to the case there actually presented for determination, and held not to justify the broad contention that a state is powerless to prevent the sale of articles of food manufactured in or brought from another state, and subjects of traffic or commerce, if their sale may cheat the people into purchasing something they do not intend to buy, and which is wholly different from what its condition and appearance import. The judiciary of the United States should not strike down a legislative enactment of a state, especially if it has direct connection with the social order, the health, and the morals of its people, unless such legislation plainly and palpably violates some right granted or secured by the national constitution, or encroaches upon

the authority delegated to the United States for the attainment of objects of national concern. On page 474, 155 U. S., and page 159, 15 Sup. Ct. Justice Harlan, in delivering the opinion of the court, says: "The language we have quoted from *Leisy* v. *Hardin* must be restrained in its application to the case actually presented for determination, and does not justify the broad contention that a state is powerless to prevent the sale of articles manufactured in or brought from another state, and subjects of traffic and commerce, if their sale may cheat the people into purchasing something they do not intend to buy, and which is wholly different from what its condition and appearance import."

In the case of *Plumley* v. *Massachusetts*, Plumley was arrested for selling in the original package oleomargerine in Illinois, and brought to the state of Massachusetts colored so as to resemble butter manufactured from milk, in violation of the Massachusetts statute. The attempt was made to show that this statute was unconstitutional, but the court sustained the statute, and held it to be constitutional. So, also, in the Case of *Rahrer, Petitioner*, 140 U. S. 545 (11 Sup. Ct. 865) it was held that the act of August 8, 1890 (26 Stat. 313, c. 728) enacting that "all fermented, distilled or other intoxicating liquors or liquids transported into any state or territory or remaining therein for use, consumption, sale or storage therein shall upon arrival in such state or territory be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise," is a valid and constitutional exercise of legislative power conferred upon congress; and, after that act took effect, such liquors or liquids introduced into a state or territory from another state, whether in original packages or otherwise, became subject to the operation of such of its then-existing laws as had been properly enacted in the exercise of its police powers.

Having held in the opinion that the legislature had the right, under its police powers, to require parties offering

for sale oleomargarine to color the same pink in order to identify it and distinguish it from ordinary butter, and the above quoted cases holding that the fact that the same is offered for sale in original packages does not prevent it from being subject to the effect of our statute requiring the same to be colored pink, which is a police regulation, we see no cause to change our opinion expressed in the original opinion, and must therefore hold the statute to be constitutional, and affirm the judgment, with costs.