ARMOUR PACKING CO. v. SNYDER et al.

(Circuit Court, D. Minnesota, Fifth Division. December 18, 1897.)

1. OLEOMARGARINE LAW—STATUTE OF MINNESOTA—VALIDITY.
    The oleomargarine law of Minnesota (Laws 1891, c. 11) affects the articles to which it relates only when sold or exposed or kept for sale within the state, and is, therefore, not invalid as interfering with the exclusive power of congress over interstate commerce.

2. SAME—POLICE POWERS OF STATE—REQUIREMENT AS TO COLORING.
    It is within the police powers of a state to provide by statute that articles sold therein as a substitute for butter shall be colored pink, to prevent the deception of purchasers and consumers.

3. SAME—CONSTRUCTION OF STATUTE—SEIZURE OF PROPERTY.
    Laws Minn. 1891, c. 11, § 1, imposes a penalty on any one who shall sell, expose for sale, or have in his possession with intent to sell, any imi-

tation or substitute for butter, not made from milk or cream, that is of any other color than bright pink; and such penalty, under the decision of the supreme court of the state, is recoverable by a criminal prosecution. Section 3 provides that having in possession any such article shall be prima facie evidence that it is kept in violation of the act, and authorizes the dairy and food commissioner to seize and take possession of such article, and upon the order of any court having jurisdiction under the act to sell the same. *Held*, that said section authorizes a seizure only in connection with a prosecution, and a confiscation and sale of the property seized only upon conviction.

Replevin by the Armour Packing Company against A. Snyder, E. B. Williams, and Berndt Anderson. Tried to the court without a jury.

Draper, Davis & Hollister, for Armour Packing Co.
H. W. Childs & George B. Edgerton, for the State of Minnesota.

LOCHREN, District Judge. This case, in which jury trial was duly waived, is an action of replevin, brought by the plaintiff, a New Jersey corporation, doing business in Missouri, against the defendants, of whom Berndt Anderson is the dairy and food commissioner of the state of Minnesota, and the others, inspectors, acting under him as such official, to recover the possession of a large number of packages of butterine, particularly described in plaintiff's complaint. On the 21st day of December, 1895, at the city of Duluth, Minn., this butterine, then in the possession of plaintiff's agents, and by them being then and there exposed and offered for sale, was seized by the defendants under the direction and authority of said Berndt Anderson, as such official, for the purpose of selling the same under the order of any court having jurisdiction, and for purposes other than to be used for food, on the ground that such offering for sale of said butterine was contrary to the statutes of the state of Minnesota. In this action, upon filing the proper bond by the plaintiff, the property was taken from the defendants by the marshal, and redelivered to the plaintiff. Its value is admitted to be the sum of $2,182.32. It is also admitted and shown that butterine and oleomargarine are the same article, and that the butterine in question was manufactured by plaintiff at Kansas City, in the state of Kansas, and shipped by plaintiff thence to Wisconsin, and later to Duluth, aforesaid, and that it was there kept, exposed, and offered for sale only in the original packages in which it came from the manufactory; which packages were marked, stamped, and in every way distinguished, as required by the laws of the United States and of the state of Minnesota, except that the butterine itself contained in such packages was not in color a bright pink, but was of the yellow color and tint of the best quality of dairy butter, and was in fact an imitation of the best dairy butter, so close in appearance and taste that few, if any, persons could distinguish it from that article. The evidence further showed that plaintiff has been for many years engaged in the manufacture of similar oleomargarine or butterine at Kansas City, aforesaid, and in shipping the same for sale to all the states and territories of the country, and that many others are engaged in the same business, and that the article enters largely into the commerce of the country. It is made of choice fat from

slaughtered cattle and leaf lard, with a small quantity of refined cotton seed oil mixed with butter, cream, and salt; and, being of a light yellowish white color, is colored to resemble the best quality of butter, and is entirely wholesome. The seizure by the dairy and food commissioner was made under chapter 11, Gen. Laws Minn. 1891, which forbids, under special penalties, the sale, exposure for sale, or having in possession with intent to sell, any article in imitation of butter, not wholly made of milk or cream, and that is of any other color than bright pink; and provides that the dairy and food commissioner may seize such article, and, upon the order of any court having jurisdiction under the act, sell the same for any purpose other than for food.

1. There is nothing in the objection that the act referred to does not, as to its title, conform to the provisions of section 27, art. 4, of the state constitution; and the supreme court of the state has declared it to be valid. State v. Horgan, 55 Minn. 183, 56 N. W. 688.

2. It is not invalid as interfering with the exclusive power of congress to regulate commerce among the several states. The act does not interfere with oleomargarine so long as it remains an article of commerce, and is being handled or stored as such. It is only after it has ceased to be an article of commerce, and become a part of the mass of the property of the state, and as such is being sold, or kept and exposed for sale, that it comes under this act; which makes no distinction in favor of the article manufactured in this state, or against that which is brought from other states.

3. The serious question in respect to this act is whether it is a valid exercise of the police power of the state to require that all imitations of butter intended to be substitutes for that article shall be colored bright pink. It is certain, and not denied, that butterine or oleomargarine is a substitute for butter, and so intended. It is equally certain that it is made in imitation of butter, even in color, so that it cannot upon ordinary inspection and use be distinguished from it, and that it is calculated and intended to deceive, not the purchasers in original packages, but the purchasers of small amounts at retail, and the consumers, into the belief that the article is in fact butter, is clear beyond doubt. The state has undoubtedly the power of inspection and of confiscation in respect to articles of food put upon the market which are deleterious and unwholesome. And I think it may go further in respect to articles of food, and take efficient measures to prevent the people from being deceived and imposed upon; not only by requiring the packages containing an imitation article of food to be so marked as to disclose its character, but may also require that the article itself shall in a designated way be so marked for the same purpose. State v. Horgan, 55 Minn. 183, 56 N. W. 688; State v. Marshall, 64 N. H. 549, 15 Atl. 210; State v. Myers, 42 W. Va. 822, 26 S. E. 539; People v. Arensberg, 105 N. Y. 123, 11 N. E. 277. It is true that plaintiff's witnesses testify with great positiveness that, while oleomargarine is largely sought and purchased as an article of commerce, yet, if it were colored bright pink, no sale of it could be made as an article of food. And this opinion

is doubtless true. But there is nothing in bright pink, as a color, calculated to excite repugnance or loathing. Shades of color akin to it are sometimes given to jellies, ices, and other articles of food, to make them more attractive, and are natural to some preparations of fruit. And it does not appear that oleomargarine would not be equally unsalable if put on the market without coloring, or with any color not a close imitation of the color of dairy butter. The inference is that its marketable value mainly consists in the facility with which those who buy it cheaper than dairy butter can impose it as that article upon those who eat it in the belief that it is butter, and would refuse it if informed what it is in fact. The state has the power to protect its people from such imposition and fraud. Plumley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct. 154.

But it is objected that the seizure in this case was without due process of law. That the state has the power to provide for the seizure and confiscation of articles exposed and offered for sale contrary to its police regulations and inspection laws is well settled. There must be due process of law, which means in each particular case such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs. Cooley, Const. Lim. 336. Property cannot be condemned and confiscated for violation of the inspection laws or police regulations of a state except upon a judicial hearing and trial, where the owner or person in charge of the property has notice and opportunity to be heard. The first section of the act under consideration provides that whoever, by himself or agent, shall sell, expose for sale, or have in his possession with intent to sell, any article or compound made in imitation of butter, or as a substitute for butter, and not wholly made from milk or cream, that is of any other color than bright pink, shall be subject to the payment of a penalty of $50, and for a second and each subsequent offense a penalty of $100, to be recovered, with costs, in any court of the state of competent jurisdiction. And the state supreme court, in State v. Horgan, 55 Minn. 183, 56 N. W. 688, held that this penalty may properly be recovered by a criminal prosecution. The third section enacts a rule of evidence applicable to this prosecution for the penalty; that the having in possession by any person or firm of any articles or substance prohibited by the act shall be considered prima facie evidence that the same is kept by such person or firm in violation of the provisions of the act. This section further provides that the state dairy and food commissioner shall be authorized to seize upon and take possession of such article or substance, and upon the order of any court having jurisdiction under the act he shall sell the same, etc. The language seems to refer to a court having jurisdiction under other provisions of the act, which could only be the court wherein the prosecution is had. When every part of the statute is considered, it seems apparent that seizure of the articles is only contemplated in connection with prosecutions for the penalty, when, in the same court, and same proceeding, the owner or person

in possession being present and on trial, and therefore having the right and opportunity to be heard, if he is convicted, the court may condemn the article seized, and order its sale under the statute. The statute, therefore, though meager in its terms, affords, if strictly followed, due process of law. But it does not provide for, nor seem to contemplate, the seizure of the article, disconnected with any prosecution for the penalty, and provides no other way of bringing the party in interest into court in the confiscation proceeding. Merely having the article in possession is not prohibited, but only the selling of it, or having it in possession with intent to sell; the bare possession being only prima facie evidence of the intent. It follows that the article can never be confiscated except when found in the hands of some one who is liable to the penalty, and the matter of confiscation is therefore properly made incident to the result of the trial, and one of the consequences of conviction. The trouble with the defense in this case is that the defendants went beyond the scope of the statute, which cannot be expanded beyond its plain terms to bring about and enforce a summmary confiscation of property. The defendants justify the seizure of this property, not in connection with, nor as accessory to, any action or prosecution for the recovery of the penalty for violating the statute, but as having been made disconnected with any proceeding in court, and without warrant of any kind. Such seizure is not authorized nor warranted by the statute, and no procedure for such a case is provided for. There must be a conviction for violation of the statute before confiscation can be adjudged or ordered, and no proceeeding purely in rem is contemplated. The plaintiff is entitled to judgment, with costs.