# STATE v. CREAMERY PACKAGE MANUFACTURING COMPANY.[1]

April 22, 1910.

Nos. 16,299—(20).[2]

**Competitors in Business — Contract Construed as Pooling of Interests.**
   An agreement between several corporations, competitors in business, and

[1]Reported in 126 N. W. 126, 623.    [2]October, 1909, term calendar.

[Note]   Illegal trusts under modern anti-trust laws, see note to Whitwell v. Continental Tobacco Co. (C. C. A. 8th C.) 64 L.R.A. 689.

the stockholders of each, providing for the transfer to one of said corporations of all the property of the others, in return for which the corporation taking title agrees to issue to each stockholder an amount of its capital stock in proportion to his interest, and containing agreements as to the future selection of directors and distribution of dividends, is a pooling or combination of interests, and only a nominal purchase and sale of the properties.

### Restraint of Trade — Evidence of Intent.

The fact that the corporation taking title subsequently carried on the business in the names of the old concerns, and placed traveling agents in the field who pretended to compete with each other, but in fact secretly agreed upon prices, is evidence of the intent of the parties to the agreement to form a combination in restraint of trade.

### Same.

When the unlawful intent is established, the character and extent of the former competition is immaterial.

### License to Foreign Corporation.

A foreign corporation accepts its license admitting it to this state subject to the proper exercise by the state of the police power.

### Forfeiture of License.

If such corporation violates a valid law of the state enacted after its admission, the license so issued may be adjudged forfeited.

### Violation of Statute by Corporation.

The continuance and maintenance by a corporation of the combination is a present violation of section 5168, R. L. 1905.

### Patent for Invention — Right of Patentees to Combine.

The patentee of an article of commerce receives from the federal government a grant of an absolute monopoly in the article patented. Quære, whether such grant confers upon the patentee the right to extend the monopoly by combining with other patentees in violation of the statute of a state designed to prevent combinations in restraint of trade.

### Sale of Articles Patented and Unpatented.

The fact that the principal inducement for the combination was to secure a monopoly in the sale of patented articles does not, if the combination includes the merchandising of articles not patented, prevent the enforcement of its law by the state.

### Forfeiture of License — Evidence.

Evidence considered, and *held* to sustain a finding that appellant be adjudged to have forfeited its license admitting it to the state.

The county attorney for Steele county, at the request and direction of the attorney general of the state and by virtue of the law in such cases provided, began an action in the district court for Steele county against the Creamery Package Manufacturing Company and the Owatonna Manufacturing Company.

Among other matters the complaint alleged that on March 1, 1898, defendants and many other corporations, firms and persons to the plaintiff unknown which were engaged in the same business as that of defendants, and among all of which there was then strong competition, entered into an agreement, trust and combination by which under various written and oral contracts between them the defendant creamery company purchased all the property of F. B. Fargo & Company and in payment therefor issued certain shares of its capital stock; that the creamery company likewise purchased all the property of many other corporations, firms and persons to the plaintiff unknown; that the defendant Owatonna company agreed no longer to sell in the open market any of the creamery supplies manufactured by it but to sell to said creamery company alone all such articles thereafter to be made by it, the creamery company agreeing to sell the same at a greatly increased price to the persons purchasing the same, and to pay to the Owatonna company fifty per cent. of the price so obtained, the said creamery company to purchase of the Owatonna company about fifty-five per cent. of the churns and butter makers sold by it; that by these agreements the Owatonna company was to sell no churns or butter making machines to any other person than said creamery company, "and it was further understood and agreed between said defendants and all said other corporations, firms and persons unknown to plaintiff that there should never thereafter be any competition between them or any of them;" "that the purpose and object of said trust, combination and agreements was to regulate and fix the prices of said churns, butter making machines and creamery supplies within the state of Minnesota, and to limit the production thereof, in restraint of trade, and to prevent, limit and destroy all competition in the purchase and sale of such articles;" "that ever since said first day of March, 1898, all the agreements hereinbefore mentioned have

110 M.—27.

been continued, renewed and carried out by the defendants and said other corporations, firms and persons to the plaintiff unknown, and for the same purpose on the part of the defendants and all others connected with them, to wit: To regulate and fix the prices of said churns, butter making machines and creamery supplies within the state of Minnesota, and to limit the production thereof, in restraint of trade, and to prevent, limit and destroy all competition in the purchase and sale of such churns, butter making machines and creamery supplies within said state;" that by virtue of said combination defendants and the other persons to plaintiff unknown have since March 1, 1898, regulated and fixed the prices of such articles within the state and have limited the production thereof, in restraint of trade, and have prevented and destroyed competition in the purchase and sale of such articles; that, immediately upon the formation of said combination, the selling prices throughout the state of Minnesota of said articles were arbitrarily advanced from ten to fifty per cent. by defendants without any justification or cause therefor except the formation of said trust, which advance in selling prices has ever since been maintained by the trust; that by reason of the wrongful acts of defendants the creamery company has wrongfully secured and controls in the state of Minnesota more than three fourths of all the business of manufacturing and selling the articles specified, and ever since March 1, 1898, it has sold such articles at exceptionally high prices and with excessive profits to itself, which prices would not and could not have been secured in open market with bona fide competition in the absence of any such combination, trust and agreement as complained of. The complaint prayed for the decree of the court forfeiting the corporate franchises of the Owatonna company and prohibiting the creamery company from continuing its business within the state of Minnesota.

The several demurrers of the defendants to the complaint on the ground that it did not state facts sufficient to constitute a cause of action were overruled.

Defendant creamery company then answered separately, admitted the purchase of all the property of F. B. Fargo & Company and the issue of certain shares of its stock in payment therefor, and similar

purchases by it of all the property of a number of other corporations, and alleged that it and the Owatonna company made eight agreements in writing, copies of which were attached to its answer; that each of said agreements had solely to do with the rights under certain letters patent of the United States, by which there was granted to the applicant, his heirs and assigns, the sole and exclusive right to make, use and vend throughout the United States for the term of seventeen years the invention described in the letters patent; that the term had not expired at the date of said agreements; that of these patents all but one were then owned by the Owatonna company; that the agreements had solely to do with defendant's interstate business; that on September 12, 1899, the answering defendant, an Illinois corporation, complied with the statute of Minnesota relating to foreign corporations doing business therein and received from the secretary of state of Minnesota, upon payment of the required fee, a certificate which entitled it to all the benefits of the laws of Minnesota for a period of thirty years from that date. The answer further alleged that if any part of any one of such agreements should be held to be opposed to any law of Minnesota, such law violates section 11 of article 1 of the state constitution and section 10 of article 1 of the federal constitution, in that such law impairs the obligation of contracts, and violates amendment 14 of the federal constitution in that it deprives defendant of property without due process of law and denies to the defendant the equal protection of the laws, and violates section 8 of article 1 of the federal constitution giving exclusive power to regulate commerce among the several states to the federal congress; that no state has any right to pass a law interferring with or in any way controlling or modifying the exclusive rights granted to inventors in their respective discoveries by acts of congress passed pursuant to section 8 of article 1 of the federal constitution; that if any law of Minnesota makes any one of the agreements invalid or void it violates section 8 of article 1 of the federal constitution, and violates the acts of congress passed pursuant thereto.

For further and separate defenses the answer set up that the cause

of action did not accrue either within six years or within two years before the commencement of the action.

Save for certain specific facts admitted, the reply was substantially a general denial.

The case was tried before Buckham, J., who made findings as stated in the opinion, and as conclusions of law ordered judgment as stated in the opinion and also ordered that the action be dismissed on the merits as to the Owatonna Manufacturing Company. The Creamery Package Manufacturing Company appealed from an order denying its motion for a new trial. Affirmed.

*Cohen, Atwater & Shaw,* for appellant.

The states are prohibited by the federal constitution from legislating as to property rights in patents, except in so far as may be necessary to protect their citizens against fraud. Tangible property, which comes into existence under a patent, is subject to the control of the state in the same manner as other property, but the intangible property right in the patent itself stands on a different plane. The states, as to this kind of property can make regulations only to protect their citizens from fraud in case congress has not acted on the same subject. Aside from this limited exception congress is the sole body having a right to control patent rights, and every state law or decision derogating in any degree from the rights granted by congress is beyond the authority of the state and void. Crittenden v. White, 23 Minn. 24; Ex parte Robinson, Fed. Cas. 11,932; Patterson v. Kentucky, 97 U. S. 501; Webber v. Virginia, 103 U. S. 344; Allen v. Riley, 203 U. S. 347; John Woods & Son v. Carl, 203 U. S. 358; Ozan Lumber Co. v. Union County Bank, 207 U. S. 251.

The weight of authority is that the state anti-trust laws cannot, without violating the federal constitution, detract from or limit the monopoly granted to the patentee by acts of congress. (See cases cited in the opinion on pages 435, 436, infra). The vital respect in which anti-trust laws infringe the patentee's exclusive rights is by limiting (and to that extent destroying) his power of assignment.

The fact that a patentee by the use of his monopoly, either separately or in combination with other patent owners, obtains inci-

dentally the control of an unpatented article, does not subject the patent to state anti-trust laws. What the patent gives to the inventor, his heirs and assigns, is a right "to make, use and vend" the patented thing, and this right is exclusive, vendible, assignable and descendible. All these qualities inhere in the grant and pass both to the patentee and his representatives and assigns. The right to make, use and vend a thing must be construed as broadly as may be in order that the thing granted may rather live than perish. So construed, it must mean the making and using and vending in every way, to the end that the patentee will, during the short term of his monopoly, receive the highest commercial advantage for his invention. It is an unlimited right, without qualification and without exception. Having, as we have seen, absolute dominion over the patented article during the period of the patent (Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405), he may use his invention or not at his pleasure, and may exact for the use of it by others any price, however exorbitant or unreasonable. In such absolute dominion he may refuse to sell either his patent or his patented device, except on the condition that the purchaser shall buy from him unpatented commodities at prices higher than the market, or sell to him such commodities at prices lower than the market. Heaton-Peninsular Button Fastener Co. v. Eureka Specialty Co., 77 Fed. 288; Victor Talking Machine Co. v. The Fair, 123 Fed. 423; John D. Park & Sons Co. v. Hartman, 153 Fed. 24.

The agreement of 1898 did not offend against the common law. Kronschnabel-Smith Co. v. Kronschnabel, 87 Minn. 230; State v. Duluth Board of Trade, 107 Minn. 506; National Benefit Co. v. Union Hospital Co., 45 Minn. 272. That agreement, when made, did not violate any law of this state. The 1891 law (c. 10, amended by Laws 1893, c. 125; see G. S. 1894, §§ 6955, 6956) is not infringed by the agreement of 1898, because that law has to do only with necessities of life. The law of 1899 (chapter 359) is by its terms prospective. It operates solely on forbidden combinations made "hereafter," that is, after April 21, 1899. The law of 1901 has no bearing on this case. It has nothing to do with the forfeiture of charters or of corporate licenses, or with ouster or exclu-

sion from the state. Sections 5168 and 5169, R. L. 1905, condemn only acts committed after March 1, 1906, when the revised laws went into effect.

In view of the decision in Crittenden v. White, the anti-trust statutes should be construed so as to exclude combinations in patent rights. The purport of what was said by this court in that case is that the state legislature had no right to interfere with free commerce in patent rights. The presumption is violent that the legislature intended to follow that declaration, and thus exclude patent rights from the prohibitions of the anti-trust laws.

This is a proceeding for a penalty or forfeiture to the state in which the statutory limitation is two years. R. L. 1905, § 4078; State v. Bonness, 99 Minn. 392. This action was begun on October 11, 1907.

The acquisition of other concerns was not in violation of any law of Minnesota. The purchase of a competing business is not forbidden in this state either by common law or by statute. National Benefit Co. v. Union Hospital Co., supra; Kronschnabel-Smith Co. v. Kronschnabel, supra; Espenson v. Koepke, 93 Minn. 278; State v. Duluth Board of Trade, 107 Minn. 506.

Defendant did not violate any law by using names other than its own in its business. These names were part of the property bought and went with the good will of the business as a valuable property right. State v. Continental, 177 Mo. 1; Beebe v. Hatfield, 67 Mo. App. 609; Washburn v. National Wall Paper Co., 81 Fed. 17. A corporation may, of course, be known under different names; it is merely a question of identity. Morawetz, Priv. Corp. (2d Ed.). § 354, pp. 339, 340; Clark, Corp. § 34, note 134; Cook, Corp. (6th Ed.) § 15, p. 84.

Defendant's license to do business in the state is a contract protected by the state and federal constitutions. It is under the shield of both constitutions, so that it cannot be revoked—(a) arbitrarily, or (b) for cause insufficient to forfeit a domestic charter, or (c) for ex post facto reasons.

*George T. Simpson,* Attorney General, *C. Louis Weeks,* Assistant Attorney General, and *Leach & Reigard,* for the State.

A few general propositions are well established by the decisions, viz:

1. The present Minnesota statute against combines is similar to the Sherman Anti-Trust Act. Judge Lochren says, at page 699 of 123 Fed. that its language is evidently taken from that act. State v. Duluth Board of Trade, 107 Minn. 506; State v. Northern Securities Co., 123 Fed. 692.

2. Contracts by which a person, or number of persons, agree to discontinue business and remain out of business for all time, or for a limited time in all territory, are illegal and void. Shawnee Compress Co. v. Anderson, 209 U. S. 423; State v. Duluth Board of Trade, supra.

3. Every agreement or transaction whose direct effect is to destroy or prevent competition is in restraint of trade. Northern Securities Co. v. United States, 193 U. S. 197; United States v. American Tobacco Co., 164 Fed. 700; Shawnee Compress Co. v. Anderson, supra; United States v. Trans-Missouri Freight Assn., 166 U. S. 290; United States v. Joint Traffic Assn., 171 U. S. 505; State v. Duluth Board of Trade, supra; United States v. Standard Oil Co., 173 Fed. 177.

4. Where the necessary and direct effect of the combination is to restrain trade or effectuate a monopoly, the intent is immaterial. Addystone Pipe & Steel Co. v. United States, 175 U. S. 211.

5. But where acts in themselves are not directly, but incidentally, in restraint of trade or do not directly tend towards a monopoly, or are only an attempt, the intent of the parties becomes material. Swift & Co. v. U. S., 196 U. S. 375, 395; Loewe v. Lawlor, 208 U. S. 274; Pennsylvania Sugar Refining Co. v. American Sugar Refining Co., 166 Fed. 254; Bigelow v. Calumet & Hecla Mining Co., 167 Fed. 704.

6. The turning over by competing corporations of their properties to one concern, whether done through the purchase of the shares of stock of the competing corporations or by purchase outright of their personal property, is prohibited. In the instant case this is further emphasized by the requirement in the contract of February 24, 1898, that the corporations whose property was taken over go

out of business and dissolve as corporations. Harding v. American, 182 Ill. 551; Richardson v. Buhl, 77 Mich. 632; Stewart v. Erie & W. Transp. Co., 17 Minn. 348 (372); Small v. Minneapolis Electro-Matrix Co., 45 Minn. 264; Lufkin v. Fringeli, 57 Oh. St. 596; McCutcheon v. Merz Capsule Co., 71 Fed. 787; McConnell v. Camors-McConnell Co., 152 Fed. 321; Continental Security Co. v. Interborough R. T. Co., 165 Fed. 945; Dunbar v. American, 224 Ill. 9; Northern Securities Co. v. United States, supra; United States v. American Tobacco Co., supra; Distilling & Cattle Feeding Co. v. People, 156 Ill. 448, 488; State v. Standard, 49 Oh. St. 137.

7. A conveyance, or attempted conveyance, of property, which offends against the preceding proposition, is void. The transferee acquires no title to such property. McMullen v. Hoffman, 174 U. S. 639; Connolly v. Union Sewer Pipe Co., 184 U. S. 540; Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U. S. 227; Dunbar v. American, supra; Thomson v. Thomson, 7 Ves. 470; Levy v. Kansas City, 168 Fed. 524; McCutcheon v. Merz Capsule Co., supra; State v. Nebraska, 29 Neb. 700.

8. A combination has obtained a monopoly when it has reached a position where it can control prices and suppress competition. United States v. American Tobacco Co., 164 Fed. 700.

9. That the Creamery Package Manufacturing Company held assignments of the patents valid on their face will avail nothing; the court will look into the whole transaction. McMullen v. Hoffman, supra, and cases cited; McCutcheon v. Merz Capsule Co., supra.

10. A combination between two or more independent and competing corporations, engaged in manufacturing and selling under letters patent, to eliminate the competition between them and create a monopoly, is in violation of the statutes. Blount Mnfg. Co. v. Yale & Towne Mnfg. Co., 166 Fed. 555; National Harrow Co. v. Hench, 83 Fed. 36; National Harrow Co. v. Hench, 84 Fed. 226; Bobbs-Merrill Co. v. Straus, 139 Fed. 155; Strait v. National, 18 N. Y. Supp. 224; National v. Bement, 47 N. Y. Supp. 462; Mines v. Scribner, 147 Fed. 927; Bement v. National Harrow Co., 186 U. S. 70.

11. This conspiracy was a continuing offense. Every overt act

committed in furtherance thereof was a renewal of the same as to all of the parties. The statute of limitations does not begin to run until the commission of the last overt act. Neither can the parties claim a vested right to violate the law. Limitations of Actions, 19 Am. & Eng. Enc. (2d Ed.); Ochs v. People, 124 Ill. 399; Spies v. People, 122 Ill. 1; 8 Cyc. 678; State v. Pippin, 88 N. C. 646; United States v. Bradford, 148 Fed. 413; Com. v. Bartilson, 85 Pa. St. 482, 489; People v. Mather, 4 Wend. 229, 261; State v. Kemp, 87 N. C. 538; American v. State, 75 Miss. 24; Lorenz v. United States, 24 App. Cas. (D. C.) 337; People v. Willis, 23 Misc. 568, Raleigh v. Cook, 60 Tex. 438; Com. v. Gillespie (7 Serg. & R. 469) 10 Am. Dec. 480; United States v. Standard Oil Co., supra; State v. Standard, supra; Travelers v. Fricke, 99 Wis. 367; United States v. Trans-Missouri Freight Assn., 166 U. S. 290; Waters-Pierce Oil Co. v. Texas, 177 U. S. 28.

The claim of appellant that its monopoly and its acts in restraint of trade wholly concern articles protected by letters patent (or rather the intangible rights of same) is wholly unwarranted by the facts in this case. The property affected is the creamery buildings themselves, the putting in of complete creamery outfits, the furnishing of butter making machines of all kinds, creamery supplies, in fact all machinery, including boilers, engines, shafting, pulleys, smoke stack, also consumable supplies such as butter tubs, salt, etc. The findings of the court lay particular stress on the monopoly of the defendant in "creamery supplies." Further, the trial court has a finding (not challenged) that such control of the general creamery supply business was secured largely by the fact that by such combination the Creamery Package Manufacturing Company became the owner of the patented articles required in such business. Therefore, the monopoly of appellant is one of tangible property, the lumber and other material going into the building, and all machinery, substances and articles used in the construction of complete outfits, and also all such installed in the building for the making and production of butter—a necessity; also the consumable supplies used in the production of butter.

We therefore urge that the authorities cited by appellant's counsel are rather against them than for them, especially the United States supreme court cases.

But we contend that the different owners of different patents, who are manufacturing and selling articles in competition with each other, have no right to combine to eliminate competition and form a monopoly, no matter what form the combination takes; and that the contracts made pursuant to such a scheme are void; and that no corporation which attempts to acquire patents pursuant to and as a part of such a scheme, can acquire any title to such letters patent. For the contract is void. This seems to us to be elementary.

The testimony is conclusive that the assignments of patents, although by instruments separate and distinct from the February 24, 1898, contract are yet in fact simply a formal matter, and possibly to make a record at the patent office in Washington; the contract of February 24, 1898, is what conveys the patents, if there was any conveyance of title. Those assignments of patents are within the rule stated in Walter A. Wood v. Greenwood, 75 S. C. 378. A contract may be lawful in itself as an isolated matter, but yet be unlawful as a part of a scheme to create a virtual monopoly.

Our contention is that (although the monopoly in question does not cover any of the special articles mentioned in the first part of G. S. 1894, § 6955), it is within the meaning of the words "or any other commodity or article whatever" and is specifically covered and named by the words "any commodity or article to be manufactured, mined, produced or sold in this state." See United States v. Bitty, 208 U. S. 393.

The statute of 1899 (chapter 359) is of the same purport, but using a little different language, and there is no repealing clause attached to this chapter. The statute of 1901 (chapter 194) has a clause (section 5), expressly stating that chapter does not repeal any former law on the subject of monopolies; and the present statute covers the same ground, and the effect of any change of language there may be in the present law is covered by section 5508, R. L. 1905, that "The provisions of the Revised Laws, so far as they are the same as those of existing statutes, shall be construed as continu-

ations thereof, and not as new enactments." This must mean similarity of substance, but not necessarily the same language.

The defendant (appellant) is the one who alleges the two year statute of limitation, and the burden is on the appellant to make good the defense (not on the plaintiff to disprove it).

O'BRIEN, J.

This action was brought under sections 5168 and 5169, R. L. 1905, for judgment forfeiting the charter of the Owatonna Manufacturing Company, a domestic corporation, and prohibiting the further transaction of business in the state of Minnesota by the Creamery Package Manufacturing Company, a corporation of the state of Illinois. The trial court found that the Owatonna Company had not violated any law, and directed judgment in its favor, but found that the Creamery Company had "entered into a pool and combination in restraint of trade," and thereby "has forfeited its license to transact business in this state." This appeal from an order denying a new trial is taken by the Creamery Company alone. The findings as to the appellant may be summarized as follows:

On September 12, 1899, appellant complied with the laws of Minnesota relating to foreign corporations, and ever since has been licensed to transact business in this state. Prior to February 24, 1898, the appellant, F. B. Fargo & Company, of Minnesota, and F. B. Fargo & Company, of Wisconsin, Cornish, Curtis & Greene Manufacturing Company, of Wisconsin, Cornish, Curtis & Greene Company, of Minnesota, and A. H. Barber & Company, of Illinois, were severally engaged in manufacturing or selling in Minnesota churns and butter-making machines and creamery supplies, a large and growing business, especially "in the sale of combined churns and butter workers, which had come to be a necessary part of any complete butter-making establishment, and that during all said time there were for sale upon the market several combined churns and butter workers covered and protected by letters patent." There was strong competition between the firms mentioned and others in the sale of those machines and supplies, and the concerns named were accustomed to bid for the construction complete of entire plants, and

"it was necessary for the successful prosecution of its business that any firm or corporation so bidding should be able to supply the patented articles used."

On February 24, 1898, the appellant entered into a combination with the companies named and C. E. Hill & Company, whereby the appellant consolidated with itself such other firms and corporations by a nominal purchase of all their property. After this, and in the spring of 1898, appellant bought out J. A. Cushman Company, of Iowa, and in 1905 it purchased the E. W. Ward Company, of Minnesota, and purchased in the same year the Freemont Butter Tub Company, of Illinois, and in 1906 purchased the stock of the Stoddard Manufacturing Company, of Vermont, and also, at a time not disclosed, a portion of the business of a corporation known as Sturgis, Cornish & Burn Company, and an Iowa concern known as Cook & Reid. The object was "to eliminate competition in the manufacture and sale of the articles dealt in by said various firms and corporations and to secure the control of the manufacture and sale of butter-making machines and creamery supplies in the state of Minnesota and adjoining states, and fix the prices of the same, and to enable the Creamery Package Manufacturing Company to establish such prices in excess of those previously paid, and to secure to said corporation a practical monopoly of the business of furnishing such creamery supplies within the state of Minnesota and elsewhere."

After making the agreement referred to, the appellant continued to manufacture and sell general creamery supplies, but used the names of the corporations and firms so consolidated with itself in various localities. Traveling agents were sent out, each pretending to be the agent of one or the other of said concerns; but they agreed among themselves as to which should secure any particular business by the use of "stalled bids," and afterwards the territory canvassed by such agents "was by the direction of the Creamery Package Manufacturing Company divided among them in such manner as to prevent competition." After this combination, competition in the sale of butter-making machinery largely ceased, and the appellant has regulated and fixed prices of churns, butter-making machines, and

other creamery supplies, has destroyed competition, has secured and controls in Minnesota a large part of such business "at largely increased prices, with excessive profits to itself, which prices could not have been secured in the open market with fair competition, and in the absence of the combination and trust arrangement hereinbefore mentioned." This control "was secured largely by the fact that by such combination the Creamery Package Manufacturing Company became the owner of the patented articles required in such business, and particularly of the combined churns and butter workers acceptable to the general trade, and that without such ownership such monopoly could not have been secured."

As conclusions of law it was found that by the combination described, and the continuance and operation of the combination up to the time of the trial, the appellant "entered into a pool and combination in restraint of trade within this state, and created a trust agreement which tends to and does limit and control the price of butter-making machines and general creamery supplies throughout the state, and prevent and limit competition in the production and sale thereof, and which was designed so to do," and thereby "has forfeited its license to transact business in this state, and should by the judgment to be entered herein be prohibited from continuing its business therein under such license."

The agreement of February 24, 1898, mentioned in the findings, and the construction of which is pivotal in this case, was executed, not only by the defendant concerns which were parties to it, but by the individual stockholders as well, and is described as follows in the brief of counsel for appellant, omitting references to folios: "The agreement recited that the Creamery Company was about to increase its capital stock by $1,600,000, making a total capital stock of $2,000,000. It was proposed to buy up the business of the other corporations and partnership, with some exceptions. It then provides for such a purchase upon the terms and conditions hereinafter set forth. Each party must guarantee payment of the debts to it. An inventory and appraisement of all the property that is the subject of the agreement is to be made, for the purpose of giving to each party stock in the Creamery Company based on the actual

value of the property purchased. The new stock is to be distributed to the stockholders of the several corporations and the members of the partnership at the rate of one share for each one hundred dollars in value of property contributed by the Creamery Company or sold to it by the others. The unissued stock remains in the treasury, to be disposed of according to law as the directors of the Creamery Company might determine. The other corporations were to be dissolved, but the Creamery Company was given the right to carry on the business of the various concerns in the names theretofore used by them. Each of the parties was to make proper assignments to the Creamery Company of all patents, and certain litigation of F. B. Fargo & Company in regard to an infringement of a patent right was to be assumed by the Creamery Company. New directors were to be elected, consisting in part of representatives of the purchased companies. A board of arbitrators as to values and assets was appointed. Patents on pending applications by any of the parties were to be assigned to the Creamery Company; and at least one-half of the profits of the business were to be distributed each year among the stockholders, unless otherwise determined by the unanimous vote of the board. There were other clauses providing for the adjustment of various details. All the provisions of the contract, except those relating to the proposed issue of bonds in the amount of $300,000, were carried out."

1. The evidence sustained the facts as found by the learned trial judge, and, although many of the assignments of error attack as unsupported certain findings, the acts of the appellant, which must control the decision of this case, are undisputed. Thus it is conceded that, prior to the making of the agreement of February 24, 1898, the concerns which were parties to that agreement were competitors in furnishing to the public creamery supplies, including patented as well as unpatented articles. The competition between those parties was active, and for the purpose of eliminating it the February agreement was made and subsequently carried out. It is not disputed that the object of the agreement was to eliminate the competition which actually existed. Appellant claims it was so

keen as to be ruinous; and its elimination necessary; while the finding is that the competition resulted in reasonable prices.

The character of the competition is not, under the statute, material. The important question is that competition actually existed to which the agreement put an end. United States v. Trans-Missouri Freight Assn., 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007. The agreement provided for the transfer of the property and assets of each concern to the appellant, which in return issued, to the respective stockholders of each, shares of its capital stock in the agreed amounts. This transaction is described by the court as a nominal, and by appellant as an actual and complete, purchase; but the steps actually taken are not disputed. The agreement provided the corporations so transferring their assets should be dissolved; but the appellant might continue the business in various localities under the names of the corporations so dissolved. This provision, which was carried out, probably did not of itself enlarge appellant's rights, but is properly referred to as characterizing the agreement, as is also the fact that traveling men were subsequently employed by the appellant, who, under its direction, held themselves out as representing separate concerns, and thus kept up the appearance of competition, while in reality all represented the appellant and made no competitive bids against each other. Without taking into consideration any fact as to which there is the slightest dispute, it is apparent that the object of the February agreement was to destroy competition, and that appellant, by conducting its business along the lines indicated in the agreement, has been reasonably successful in securing the desired result.

2. Appellant was admitted to transact business in this state as a foreign corporation September 12, 1899, and inasmuch as the agreement now claimed to be unlawful was executed February 24, 1898, it is argued that the revocation of its license would violate the contract between the state and the appellant. The appellant was licensed to transact business lawfully. Even though the license from Minnesota was a contract, it was that appellant would transact its business in a lawful manner and subject to the exercise by the state of its police power. If the February agreement was unlawful, its

maintenance and the continuance of its terms continue to be unlawful. United States v. Bradford (C. C.) 148 Fed. 413; Ochs v. People, 124 Ill. 399, 16 N. E. 662. If the agreement was not prohibited by any law of this state at the time it was entered into, but the conduct of appellant's business in accordance with its provisions is now prohibited by a valid law, a continuance of such unlawful conduct justifies a forfeiture of appellant's license.

It is now settled beyond dispute that a corporation accepts its charter subject to the proper exercise of the police power. The appellant, a foreign corporation, cannot claim any greater sanctity for its license from Minnesota than could a corporation directly organized under her authority. Minneapolis & St. L. R. Co. v. Minnesota, 186 U. S. 257, 22 Sup. Ct. 900, 46 L. Ed. 1151; Pennsylvania R. Co. v. Miller, 132 U. S. 75, 10 Sup. Ct. 34, 33 L. Ed. 267; State v. Smith, 58 Minn. 35, 59 N. W. 545, 25 L.R.A. 759; American Smelting Co. v. Colorado, 204 U. S. 103, 27 Sup. Ct. 198, 51 L. Ed. 393; Hammond Packing Co. v. Arkansas, 212 U. S. 322, 29 Sup. Ct. 370, 53 L. Ed. 530; United States v. Trans-Missouri Freight Assn., supra. Individual citizens exercise their respective callings subject to the same power, and in a multitude of instances have been compelled to submit to laws regulating their conduct, although their entrance upon the business or professional pursuit involved antedated the law regulating it. State v. State Medical Examining Board, 32 Minn. 324, 20 N. W. 238, 50 Am. 575; State v. Zeno, 79 Minn. 80, 81 N. W. 748, 48 L.R.A. 88, 79 Am. St. 422; Minnesota State Pharmaceutical Assn. v. State Board of Pharmacy, 103 Minn. 21, 114 N. W. 245.

We believe the February agreement to have been unlawful under the common law. State v. Duluth Board of Trade, 107 Minn. 506, 121 N. W. 395, 23 L.R.A.(N.S.) 1260. But we do not find it necessary to rest our decision upon that ground, nor to discuss the various statutes created since the making of the agreement in 1898. The state claims appellant is a party to and now maintains a combination in restraint of trade, in violation of section 5168, R. L. 1905, which forbids entering into any pool, trust agreement, combination, or understanding whatsoever with others in restraint of trade, or to limit,

fix, control, maintain, or regulate the price of any article of trade, manufacture, or use, or to prevent or limit competition in the purchase and sale of such articles. As already said, appellant is subject to that statute, and we have left to consider whether appellant is violating it, and, if so, is the statute a valid police regulation by the state as applied to appellant, whose transactions consist principally in the sale of patented articles.

3. It is argued that when the February agreement, providing for the transfer to the appellant of the properties of the other concerns, was carried out, a purchase of those properties was completed, which was lawful in itself. The contract, it is claimed, was fully executed, and thereafter the appellant, as the absolute owner of all the property, might lawfully continue its business; further, that the use of the names of the other concerns and the fictitious competition between appellant's agents did not change the fact that, instead of a combination between two or more persons, the appellant was in truth only conducting its own business in the way of its choosing.

If these deductions were sound, we would have for determination how far one may go in good faith and for a lawful purpose in taking over by actual purchase the business of each competitor whom he encounters. Stewart v. Erie & Western Transportation Co., 17 Minn. 348 (372); Lydiard v. Chute, 45 Minn. 277, 47 N. W. 967; Kronschnabel-Smith Co. v. Kronschnabel, 87 Minn. 230, 91 N. W. 892; Espenson v. Koepke, 93 Minn. 278, 101 N. W. 168; State v. Duluth Board of Trade, supra. To our mind no such question is before us. The reason for authorizing the creation of corporations and their legal status when formed are familiar to all. A characteristic quality of a corporation, which is essential to the utility of the association, is that for the transaction of its legitimate business it be a legal entity, having its own life and individuality distinct from its members; but when the corporate form is assumed by individuals for the purpose of evading the law, and as a mere cloak under which unlawful practices may be concealed, the courts will disregard the appearance and consider the substance, and thus determine the propriety of the transaction under scrutiny. People v. North River, 121 N. Y. 582, 24 N. E. 834, 9 L.R.A. 33, 18 Am. St. 843;

Unckles v. Colgate, 148 N. Y. 529, 43 N. E. 59; Gallagher v. Germania Brewing Co., 53 Minn. 214, 54 N. W. 1115; State v. Standard, 49 Oh. St. 137, 30 N. E. 279, 15 L.R.A. 145, 34 Am. St. 541; Harding v. American, 182 Ill. 551, 55 N. E. 577, 64 L.R.A. 738, 74 Am. St. 189; Northern Securities Co. v. United States, 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679; Cook, Corp. (6th Ed). §§ 663, 664.

The February agreement contemplated no absolute purchase and sale of the various properties. Upon the contrary, the plan was to place all the properties in the possession of the appellant, to be managed jointly for the benefit of the original owners, each of whose interest was to be evidenced by shares of the capital stock of appellant issued to each in proportion to his original holding. If in place of the corporation an individual had been selected, who, when the legal title was vested in him, issued certificates of trust, the violation of law would be apparent. This agreement went further. It provided for directors, representing those who made transfers of property, and for a minimum division of profits, thus continuing the control of each interest, instead of leaving such control with the majority of the stock, where it is ordinarily found; and, notwithstanding the provision for dissolution of the corporations so transferring their respective properties, the right to use the name of each for the purpose of simulating competition was attempted to be conferred upon the appellant. The record does not disclose the terms upon which the properties of the concerns not parties to the agreement were subsequently taken over, but, without regard to those transactions, it must be held that the learned trial judge was entirely correct in describing the transfer made pursuant to the February agreement as a nominal purchase. State v. Duluth Board of Trade, supra; Dunbar v. American, 224 Ill. 9, 79 N. E. 423, 115 Am. St. 132; Continental Securities Co. v. Interborough R. T. Co. (C. C.) 165 Fed. 945.

4. In the fourteenth finding of the trial court it is said that the control of the general creamery supply business "was secured largely by the fact that by such combination the Creamery Package Manufacturing Company became the owner of the patented articles re-

quired in such business, and particularly of the combined churns and butter workers acceptable to the general trade, and that without such ownership such monopoly could not have been secured." From this and certain other of the findings it is argued the only combination found by the court, and made the basis of its order for judgment, is the combination between patent owners in respect to their monopoly, with only an indirect and incidental effect on other commodities, and that it is beyond the power of the state to detract from or limit the monopoly granted to the patentee of an article when letters patent had been duly issued to him under the authority of the federal government.

The findings, taken in their entirety, are undoubtedly to the effect that the principal articles sought to be controlled are protected by patents, and in the absence of such control the combination would probably never have been made. But it is equally true that the evidence fully sustains the findings that the appellant's dealings are not confined to patented articles, but there are included general creamery supplies, amounting sometimes to the construction of the entire plant. We have not here for determination whether it is within the power of the state to prohibit a combination to control the manufacture and sale of patented articles, but whether the inclusion in a combination otherwise unlawful of provisions with reference to such articles so leavens the transaction as to make it lawful in its entire scope.

There is sharp conflict of authority as to whether an agreement which has reference solely to patented articles is subject to the statute of a state prohibiting acts in restraint of trade, and the contention of appellant's counsel that, under the federal constitution and laws, a complete and absolute monopoly in such articles is conferred upon the patentee and his assigns, which cannot be limited or controlled by legislative enactments of a state designed to restrain monopolies, is not without support. Columbia Wire Co. v. Freeman Wire Co. (C. C.) 71 Fed. 302; Rubber Tire Wheel Co. v. Milwaukee Rubber Works Co., 154 Fed. 358, 83 C. C. A. 336; Heaton-Peninsular Button Fastener Co. v. Eureka Speciality Co., 77 Fed. 288, 25 C. C. A. 267, 35 L.R.A. 728; Ex parte Robinson, 2 Biss. 309, Fed. Cas. No. 11,932.

That the grant from the federal government does not protect a patentee who resorts to practices forbidden by a state enactment, which conduct, together with the ownership of the letters patent, results in establishing a monopoly in restraint of trade, has also support. National Harrow Co. v. Hench (C. C.) 76 Fed. 667; National Harrow Co. v. Hench, 83 Fed. 36, 27 C. C. A. 349, 39 L.R.A. 299; National Harrow Co. v. Hench (C. C.) 84 Fed. 226; Vulcan v. Hercules, 96 Cal. 510, 31 Pac. 581, 31 Am. St. 242; Blount Mnfg. Co. v. Yale & Towne Mnfg. Co. (C. C.) 166 Fed. 555; Bobbs-Merrill Co. v. Straus (C. C.) 139 Fed. 155; Mines v. Scribner (C. C.) 147 Fed. 927.

The state has power, in the absence of a federal statute regulating sales of letters patent within its territory, "to make reasonable regulations concerning the subject, calculated to protect its citizens from fraud." Allen v. Riley, 203 U. S. 347, 355, 27 Sup. Ct. 95, 51 L. Ed. 216. See also Ozan Lumber Co. v. Union County Nat. Bank, 207 U. S. 251, 28 Sup. Ct. 89, 52 L. Ed. 195; Bement v. National Harrow Co., 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058.

There can be no question that the holder of a duly issued patent has a lawful monopoly in its use, and he violates no public policy in protecting his monopoly to the fullest extent. But it does not follow from this that the patentee acquires the right by combining with other patentees to extend the monopoly granted to each, and thus abuse the privilege conferred upon him by the government. However this may be, we have no doubt that the combination under consideration is within the prohibition of the statute. It includes the manufacture and sale of many articles not protected by patents, and the fact that the patented articles constituted the principal ones dealt in by appellant, and that without a merger as to them no monopoly in the other articles would have been attempted, cannot be accepted as a justification of the combination.

Our conclusion is that the activities of the appellant in their entirety are subject to the statutory regulations of the state, and that the district court correctly found that the practices and attitude of the parties to the agreement of February 24, 1898, violate the laws of this state, in that the effect of the agreement was to establish a

pool or combination in restraint of trade, which continues in force and operation, to all of which the appellant is a party, and by such conduct has forfeited its license to transact business in Minnesota.

Order affirmed.

On June 3, 1910, the following opinion was filed:

PER CURIAM.

In a proper petition for a reargument defendant's counsel have with great ability urged that this court erred in holding that the evidence sustained the facts found upon the trial; and further, in holding that defendant had been reasonably successful in destroying competition; and again, in holding that the transfer to the defendant of the properties of the various concerns mentioned in the opinion amounted to no more than a nominal purchase by the defendant; and finally, that the judgment sustaining the order of the district court be modified so as to provide for affirmance unless the trial court should on a further hearing determine that the methods of business condemned by the decision of this court had been abandoned by the creamery company.

The application must be refused. Our views with reference to the three exceptions taken by defendant to our holdings in the original opinion remain unchanged. The effect of granting the final request would be to grant a new trial of the action in spite of our holding that the order denying a new trial should be affirmed. The judgment of the court, being an affirmance of the order denying a new trial, does not, of itself, preclude the district court from entertaining any application by the defendant made to it in accordance with the judicial procedure of this state, and we do not feel justified in making any modification of the order which would imply or suggest any departure from the regularly established rules governing such cases.