## JOSEPH A. STOLZ vs. EBENEZER THOMPSON.

### August 19, 1890.

Constitution—Subject and Title of Act.—Laws 1889, c. 7, relating to the adulteration of food, held to embrace but one subject, within the meaning of the constitutional prohibition.

Same—Adulteration of Baking Powder.—The requirement of sections 1 and 2 of that statute, that baking powder containing alum be marked so as to show that fact, held constitutional, whether or not other sections of the act are constitutional.

Action brought in the municipal court of St. Paul, to recover $250 for goods sold and delivered. In his answer the defendant admitted the facts stated in the complaint, and pleaded that the goods sold consisted of baking powder in cans and boxes, known as "Gates' Crystal Baking Powder;" that such powder contained alum, but the cans and boxes were not labelled or marked in any way showing that fact; and that the goods were offered and sold by plaintiff to defendant with the purpose and intent on the part of both of them that they should be disposed of to defendant's customers in St. Paul, and that the sale was in violation of Laws 1889, c. 7. The plaintiff appeals from an order overruling his demurrer to the answer.

*F. M. Trissal*, for appellant.

*Davis, Kellogg & Severance*, for respondent.

DICKINSON, J. The question before us is whether sections 1 and 2 of chapter 7 of the General Laws of 1889, embracing a prohibition of the sale of baking powder containing alum, unless the condition therein prescribed shall be complied with, is a constitutional exercise of legislative power. These sections declare it to be a misdemeanor to manufacture for sale within the state, or to offer for sale, or to sell, baking powder containing alum, unless a label bearing the words, "this baking powder contains alum," shall be affixed to each package of the same. Subsequent sections of the act, concerning which we shall have but little to say, in terms empower designated state officials to enter the premises where such commodities are manufactured or kept for sale, to open packages, to inspect contents, and take samples therefrom for analysis. They contain also a declared power of seizure and sale under conditions not necessary to be particularly stated. The act does not embrace more than one subject, within the meaning of the constitutional prohibition. The act may be fairly designated as one relating to the adulteration of various articles of food and drink, and its provisions are properly related to that general subject.

The statute does not prohibit the manufacture or sale of baking powder containing alum, but requires the fact, when alum is a constituent of it, to be disclosed in the manner specified. We have no doubt that it is within the power of the legislature to impose this requirement. We need not enter upon a consideration of the question as to whether the use of alum in food in such quantities as might be included in a baking powder is or is not injurious to health. The validity of that part of the law which we are considering does not depend upon the fact being that it is injurious. As to that fact we will only say that there has long existed a belief, more or less general, that the use of alum as an ingredient in food is harmful; and as early at least as about the middle of the last century (31 Geo. II. *c*. 29, § 21) the use of alum as an ingredient of bread was prohibited. Such prohibition was renewed in later statutes, and as late as 35 & 36 Vict. *c*. 94, its use in intoxicating liquors was prohibited. We deem it immaterial

whether the enactment under consideration was induced by a belief: on the part of the legislature that such use of alum was injurious, or by the supposed fact that a large proportion of the people believed it to be so, and would not purchase or use in their daily food a composition containing it, unless the fact were concealed from them. In either case the law requiring the marking of the packages containing the compound so as to show the fact would not be subject to objection on constitutional grounds. The use of such compounds, generally designated as "baking powder," has become very common, if not almost universal, in the preparation of food. It cannot well be doubted that it is a common right of the people to be informed, so far as that is reasonably practicable, if the substances exposed for sale as food contain ingredients which are actually hurtful, or which they believe to be so, and which therefore they would not knowingly purchase or use. It may be that, if the fact were open to discovery by common observation, statutory regulation would be unnecessary to protect the people from imposition, and that the purchaser should be left to purchase and use the commodity or not according to his own judgment. But we suppose that the presence of alum in such compounds is not open to detection by the use of means available to people in general, and that in the absence of statutory regulation the people have practically no choice but to purchase and use such goods as are offered to them, or to wholly avoid the use of such preparations. One of the grounds justifying the interference by the legislature to regulate the carrying on of ordinary business affairs is the fact that unless a preventive remedy be applied people will in general, or very commonly, be imposed upon, the circumstances being such that ordinary personal caution will be ineffectual to guard against it. Tiedeman, Lims. of Police Power, § 89, and authorities cited below. And especially as respects what is to be sold for consumption as food should it be considered to be within the police power of the legislature to impose such regulations as may reasonably be deemed necessary to protect the people from imposition or fraud. *Butler* v. *Chambers*, 36 Minn. 69, 71, (30 N. W. Rep. 308.) Our decision above cited covers this case in principle, and goes farther in sustaining legislative enactments designed to protect the people from.

such imposition than is necessary for the purposes of this case. The principle above announced is also sustained in *People* v. *Arensberg,* 105 N. Y. 123, (11 N. E. Rep. 277,) in which the prior case of *People* v. *Marx,* 99 N. Y. 377, (2 N. E. Rep. 29,) is distinguished; and in *Palmer* v. *State,* 39 Ohio St. 236. See, also, *Powell* v. *Com.,* 114 Pa. St. 265, (7 Atl. Rep. 913;) affirmed in supreme court of the United States, *Powell* v. *Pennsylvania,* 127 U. S. 678, (8 Sup. Ct. Rep. 992, 1257;) and *State* v. *Addington,* 77 Mo. 110, 118. This statute does not prohibit the sale of such compounds. The owner is not deprived of his property, nor denied the equal protection of the laws, by being required to disclose the real nature or ingredients of the commodity which he exposes for sale. No man has the right, protected by the constitution from legislative interference, to keep secret the composition of such goods in order that others may be induced to purchase and use what they would consider to be hurtful, and what they would not knowingly purchase or use. The owner of such property may be legally required, as a matter of proper police regulation for the benefit of the people in general, to sell it for what it actually is, and upon its own merits, and is not entitled, as a matter of constitutional right, to the benefit of any additional market value which he may secure by concealing its true character. *People* v. *Arensberg, supra.*

The provisions of this law are not such as to justify the court in construing it to have been intended by the legislature to accomplish other results than a proper police regulation of the business, and the protection of the people from having imposed upon them, to be used in their food, a substance which they may be unwilling to purchase or to use. Of course, if the law were obviously a mere dishonest guise for favoring one class of goods or dealers at the expense of another, the case would be very different; but legislative enactments are not to be regarded as intended as mere dishonest pretences for the accomplishment of results wholly beyond the constitutional and proper domain of legislation, unless it is perfectly obvious and unquestionable that such is the case.

We deem it unnecessary to consider whether other sections of this statute, such as those relating to the right of search for goods not

branded as required by the act, and as to the manner in which such goods may be disposed of, are or are not valid. It seems to us to be very apparent that the legislature intended to require the marking of goods of this kind, and to make the violation of this prescribed duty a penal offence, and that the relation to this part of the act of the other provisions, the validity of which is questioned, is such that the conclusion is not justified that the legislature might not have imposed this requirement if it had been known that the other provisions referred to were invalid. Hence the validity of that part of the law, the effect of which is involved in this case, does not depend upon the subsequent sections being also valid, a question which we do not consider *State* v. *Kantler,* 33 Minn. 69, (21 N. W. Rep. 856;) *State* v. *Cantieny,* 34 Minn. 1, 7, (24 N. W. Rep. 458;) *O'Brien* v. *Krenz,* 36 Minn. 136, (30 N. W. Rep. 458.)

Order affirmed.