STATE OF MINNESOTA *vs.* KNUT ASLESEN.

STATE OF MINNESOTA *vs.* CHARLES M. BASSETT.

Argued April 28, 1892.  Decided May 20, 1892.

Constitutional Law—Police Power.

The provisions of Laws 1891, ch. 12, "regulating the manufacture and sale of lard, and of lard compounds and substitutes, and of foods prepared therefrom," are valid, as a legitimate exercise of the police power of the state.

Appeal by defendant Knut Aslesen from an order of the Municipal Court of the City of Minneapolis, *Mahoney*, J., made February 4, 1892, refusing him a new trial.

Appeal, also, of defendant Charles M. Bassett from an order of the same court, made February 24, 1892, denying a new trial in his case.

Complaint was made in the Municipal Court of the City of Minneapolis against each defendant under Laws 1891, ch. 12.  Each was arrested, and pleaded not guilty, and tried and convicted; and each moved for a new trial, claiming the act to be unconstitutional.

*C. M. Hertig* and *Oliver & Showalter*, for appellants.

Laws 1891, ch. 12, under which appellant was convicted, is not a legitimate exercise of the police power of the State, but, under the guise of police power, is an unconstitutional invasion of private right.  *Stolz* v. *Thompson*, 44 Minn. 271; *Toledo, W. & W Ry. Co.* v. *City of Jacksonville*, 67 Ill. 37; *People* v. *Gillson*, 109 N. Y. 389;

*Stone* v. *Farmers' Loan & Trust Co.,* 116 U. S. 307; *Dent* v. *West Virginia,* 129 U. S. 114; *Austin* v. *Murray,* 16 Pick. 121; *Com.* v. *Alger,* 7 Cush. 53; *State* v. *Gilman,* 33 W. Va. 146; *State* v. *Goodwill,* Id. 179; *People* v. *Budd,* 117 N. Y. 1.

Acts seeking to regulate the relations between mining companies and their employes have been declared unconstitutional. Yet they are as certainly within the police power of the State as the act in question. *Millett* v. *People,* 117 Ill. 294; *Godcharles* v. *Wigeman,* 113 Pa. St. 431; *State* v. *Goodwill,* 33 W. Va. 179; *State* v. *Fire Creek Coal & Coke Co.,* Id. 188; *Hancock* v. *Yaden,* 121 Ind. 366.

*R. D. Russell, L. A. Dunn, Ace P. Abell, J. F. McGee,* and *Moses E. Clapp, Atty. Gen.,* for respondent.

The fourteenth Amendment to the Constitution of the United States does not limit, nor was it designed to limit, the subjects upon which the police power of the state may be exerted. *Minneapolis & St. L. Ry. Co.* v. *Beckwith,* 129 U. S. 26; *Powell* v. *Pennsylvania,* 127 U. S. 678.

The statute is not an infringement of the Constitution of this state. *Butler* v. *Chambers,* 36 Minn. 69; *Stolz* v. *Thompson,* 44 Minn. 271.

MITCHELL, J. Each of the defendants was convicted of a violation of the provisions of Laws 1891, ch. 12, regulating the manufacture and sale of lard, and of lard compounds and substitutes, and of foods prepared therefrom. Defendant Aslesen was convicted of selling a "lard substitute" called "cottoline," consisting of a mixture of beef stearine and refined cotton-seed oil, without affixing to the package containing the same a label containing the words "lard substitute," together with "the names and approximate proportions of the several constituents contained in the mixture or compound." The defendant Bassett was convicted of selling certain articles of food prepared with this same "lard substitute," without furnishing the purchaser with a card containing the required notice of that fact.

Upon the trials each of the defendants offered to prove that "cottoline was a wholesome, palatable, and nutritious article of food; also that it does not resemble lard in appearance, and has never been

sold as lard." This evidence the trial court excluded on the ground that, under the provisions of the act, the facts sought to be proved were immaterial. The court's construction of the act was clearly correct. It is evident from its language that its provisions are not confined to articles "made in the semblance of lard, or as an imitation of lard," or which so resemble lard that they are liable to be sold and passed off on the public as lard, and which, for the sake of brevity, we may call "simulated articles." The act applies as well to any substance made as "a substitute for lard, and which is designed to take the place of lard," and which consists of any mixture or compound of animal or vegetable oils or fats other than hog fat in the form of lard, whether such substance resembles lard in appearance or not. Neither is the act limited in its application to substances that are unwholesome. It applies alike to all "lard substitutes," consisting of the specified mixture or compound, regardless of their appearance or actual hygienic qualities. The cases therefore come down to the question whether the act, as thus construed, is valid as a legitimate exercise of the police power of the state.

Had the act absolutely prohibited the manufacture and sale of all such articles, its validity might well be questioned. The doctrine of *Butler* v. *Chambers*, 36 Minn. 71, (30 N. W. Rep. 308,) does not go far enough to sustain such an act; for in that case we construed the "oleomargarine" act as applying to and aimed at those compounds resembling butter in appearance and flavor, and which for that reason were liable to deceive and mislead purchasers and consumers as to the real nature of the product; and the act was sustained upon the theory that if, in the reasonable opinion of the legislature, this fraud or imposition on the public could not be effectually prevented, except by prohibiting the sale and manufacture of the "simulated articles" altogether, it was competent for them to do so.

But the act now under consideration is one of regulation, merely. It does not prohibit the sale of these "lard substitutes," or of articles of food prepared with them, but simply requires that the seller shall disclose to the purchaser, by label or card, the nature and ingredients of the article which he offers for sale, so that the purchaser may be fully advised as to just what he is buying. As applied to

such articles of food, we are unable to see why such regulations are not valid, as a legitimate exercise of the police power. We think the case is not distinguishable in principle from *Stolz* v. *Thompson*, 44 Minn. 271, (46 N. W. Rep. 410,) in which we sustained the validity of a similar regulation with reference to the sale of baking powders containing alum. It is a matter of common knowledge that substitutes for old and well-known articles of food are becoming quite common at the present day. Being comparatively new on the market, their qualities and ingredients are not usually a matter of common knowledge. The nature of the ingredients of these compounds is usually not discernible by the appearance of the article, and the means of ascertaining what these ingredients are, are not available to the mass of the people. Many of them, like cottoline, may be entirely wholesome, but, in this day of the common adulteration of articles of food, others may be composed of deleterious ingredients. And what may be wholesome for one person may be unwholesome for another. Moreover, it is also a matter of common knowledge that, whether well founded or not, there is a popular prejudice against certain ingredients as an article of food. This is so, for example, with cotton-seed oil. Many would not purchase or use a lard substitute of which that oil was an ingredient, or any article of food prepared with it. In view of all these facts, the legislature has seen fit to require the seller of these lard substitutes to label the article which he sells with what, for convenience, we may call a quantitative analysis of its ingredients, and to require the seller of any article of food prepared with such lard substitute to give notice of the fact to the purchaser, so that he may know just what he is buying. This certainly does not deprive the seller of his property without due process of law. No man has a constitutional right to keep secret the composition of substances which he sells to the public as articles of food. Such regulations do certainly have some real or substantial relation to the objects aimed at, to wit, as expressed in the title of the act, "to prevent fraud, and to preserve the public health." They do not impair any fundamental rights of life, liberty, or property. Under such circumstances, we cannot say that the legislature has exceeded the legitimate exercise of the police power of the state. If

the legislation is unwise or inexpedient, the only appeal is to "the ultimate tribunal of the public judgment, exercised either in the pressure of public opinion, or by means of the suffrage."

Judgments affirmed, and causes remanded, with directions to carry the sentences into execution.

(Opinion published 52 N. W. Rep. 220.)