STATE v. M. H. SHEROD.

STATE v. DAVID W. HORRIGAN.

STATE v. PAT O'GRADY.[1]

July 14, 1900.

Nos. 12,141, 12,201, 12,208—(15, 17, 257).

Baking Powder—Laws 1899, c. 245, Constitutional.

Laws 1899, c. 245, relating to baking powders, *held* constitutional; not being an infringement upon private rights, and not class legislation.

In the municipal court of St. Paul, Orr, J., defendants were convicted, under separate complaints, of selling baking powder which was not labelled as required by Laws 1899, c. 245. From the judgments of conviction they respectively appealed. Affirmed.

[1] Reported in 83 N. W. 417.

*S. C. Olmstead*, for appellants Sherod and Horrigan.

*Munn & Thygeson*, for appellant O'Grady.

*W. B. Douglas*, Attorney General, *Horace E. Bigelow*, County Attorney, and *F. W. Zollman*, Assistant County Attorney, for respondent.

LEWIS, J.[2]

These three cases were submitted together, and may be so disposed of. The only question involved is the constitutionality of the baking powder law (Laws 1899, c. 245). This statute requires all manufacturers and sellers of all compounds or mixtures intended for use as a baking powder to affix a label to every box or can, containing the name and residence of the manufacturer, and the words, "This baking powder is composed of the following ingredients and none other" (followed by the names of the ingredients). This chapter is an amendment to Laws 1889, c. 7, which required such a label to be put upon boxes and cans containing alum, in any form and shape, as a constituent. The effect of the amendment of 1899 was to require the label to be placed upon all baking powders, regardless of whether they contained alum or any deleterious substance, or were pure and healthful. The several defendants were convicted in the municipal court of St. Paul of selling baking powder without placing thereon the required label, and they appeal from judgments entered in such proceedings.

In the case against O'Grady we are asked to pass upon the law, conceding, under stipulation, that the baking powder sold was a pure cream of tartar powder and not injurious to the public health, whereas in the other cases the state took the position, and introduced evidence to the effect that the cream of tartar powders were not pure and healthful, and that the law should be sustained on that ground. The amendment of 1899 having wiped out all distinction between the various kinds of powders, and requiring the label as to the ingredients, without regard to purity or healthfulness, the constitutionality of the law does not depend upon the nature of the ingredients of the powders sold by defendants Sherod and Horrigan, and we will not consider the evidence in that respect. If the

[2] BROWN, J., absent, took no part.

law cannot be sustained upon the broad ground that it is a proper exercise of the police power of the state, without regard to the purity and healthfulness of any particular powder, then it cannot be sustained with reference to powders which are impure and harmful in their use. The law is attacked upon the usual grounds urged in such cases, viz. that it is not a proper exercise of the police power of the state, and is in violation of article 1, § 2, and article 4, §§ 33, 34, of the state constitution.

Appellants advance the argument that, if the baking powders are pure cream of tartar powders, there is no reason requiring their ingredients to be published, and it is an unwarranted interference with a manufacturer's or dealer's business to put him to that expense and annoyance. Further, that the public will receive no benefit from such labels; that purchasers of such powders do not know the meaning of the terms used; that it is unjust to cause a manufacturer or dealer in pure powders to submit to such a law, for the purpose of exposing those who make or deal in a harmful article; that if such a law can be enforced against baking powders, without reference to their purity, then pure sugar, pure flour, and other pure staple articles of food may be likewise brought under similar restrictions, and to single out baking powder in this manner is class legislation and void.

There is nothing new in all these objections. The field has been fully covered by decisions of this court wherein the general principles controlling these cases have been established, and it is only necessary to refer to them. The 1889 law was construed in the case of Stolz v. Thompson, 44 Minn. 271, 46 N. W. 410. As above stated, that law required the label only as to powders containing alum. The court say:

"The statute does not prohibit the manufacture or sale of baking powder containing alum, but requires the fact, when alum is a constituent of it, to be disclosed in the manner specified. We have no doubt that it is within the power of the legislature to impose this requirement. We need not enter upon a consideration of the question as to whether the use of alum in food in such quantities as might be included in a baking powder is or is not injurious to health. The validity of that part of the law which we are considering does not depend upon the fact being that it is injurious."

Then follows a very full statement of the reasons for sustaining the law. They are as follows: That the use of baking powder compounds has become common; that, being a compound, the people should know the contents that they may judge of their quality before purchasing; that people are less easily imposed upon when the contents are thus made known.

"The owner of such property may be legally required, as a matter of proper police regulation for the benefit of the people in general, to sell it for what it actually is, and upon its own merits, and is not entitled, as a matter of constitutional right, to the benefit of any additional market value which he may secure by concealing its true character."

It will be noticed that this decision rests upon the broad ground that baking powders are a compound, the contents of which the people have a right to know before purchasing; and, although the law then referred to alum compounds, the opinion expressly states that it is immaterial whether or not alum is injurious in such use. This decision covers every proposition advanced by appellants.

If there was good reason for that law at that time, there is more reason for the present law at this time. According to the testimony of an expert witness, there are nearly fifty kinds of baking powders on the market. They are divided into several classes, which it is not here necessary to mention. It is well known that there is a great controversy going on, the world over, as to the merits of the various kinds of baking powder. Eminent scientists differ as to which are harmful and which are wholesome. Baking powders are inclosed in sealed cans or boxes, to protect them from moisture, and can easily be adulterated and pushed upon the market. It does not follow that, because a powder is now pure cream of tartar, some other ingredient may not be added at a future time. The state aims to deal justly by all manufacturers and dealers, by subjecting them all to the same requirements. Each manufacturer must deal honestly with the public, if he would keep their confidence; but those who have so dealt, and built up great reputations upon the excellence of their goods, should not complain at being obliged to take the public still further into their confidence by openly making known the contents of the article.

80 M.—29

Appellants base their claim that the statute is class legislation upon the ground that it distinguishes baking powders from other well-known food products, such as butter, sugar, and flour. While there is a clear distinction between baking powders, which consist of compounds or mixtures, and the articles mentioned, which are simply primary food products, we are not prepared to say that such a statute might not be extended to include such articles, if, in the opinion of the legislature, the adulteration of those products would make it advisable. That question is not before us. But that baking powders may be treated as a class, without being subject to the objection of being class legislation, has been decided in Stolz v. Thompson, supra. As stated in State v. Smith, 58 Minn. 35, 59 N. W. 545:

"When a subject is within that [the police] power, the extent to which it shall be exercised, and the regulations to effect the desired end, are generally wholly in the discretion of the legislature."

Again, in State v. Mrozinski, 59 Minn. 465, 61 N. W. 560;

"The courts will never set up their judgment against that of the legislature, and hold a police law invalid, unless it is clearly so, as having no reasonable tendency to accomplish the desired end."

The law in question reasonably tends to prevent fraud, and, for the reasons stated, is not an infringement upon private rights, and is not class legislation.

Judgments and orders affirmed.