# STATE ex rel. EDWARD T. YOUNG v. STANDARD OIL COMPANY.[1]

### May 20, 1910.

### Nos. 16,303—(2).

**Foreign corporation — revocation of license.**
    The procedure allowed by chapter 269, Laws 1907, for revocation of the license of a foreign corporation, is not exclusive, and under the discretion

[1] Reported in 126 N. W. 527.

vested in him the attorney general of the state may in the name of the state institute proceedings to have such license adjudged forfeited.

**Title of act.**

The fact that the title of an act is broader than the act itself does not render the enactment invalid under section 27, article 4, Const. (Minn.)

**Sales of merchandise — class restrictions.**

The legislature may impose special restrictions regulating the sale and distribution of one class of commodities, unless beyond doubt no substantial conditions or usages of trade differentiate that class from others.

**Same — products of petroleum — query.**

Query, whether the legislature intended to include in chapter 269, Laws 1907, other than the primary products of petroleum by the use of the words "petroleum or any of its products."

**Same — by-products.**

Assuming that by-products are included, it is doubtful if defendant, when charged with violating the act in respect to a primary product, can question the validity of the act as applied to by-products.

**Same — statute invalid in part.**

The inclusion in a statute of articles not subject to classification with articles which are so subject does not render the enactment invalid as to the articles properly subject to classification.

**Same — discrimination in price — statute valid.**

Chapter 269, Laws 1907, forbidding discriminations in the prices charged for petroleum or any of its products, as relied upon in this action, wherein defendant is charged with discriminating in the selling price of kerosene oil, *held* to be a valid police regulation, and not unconstitutional.

Action in the district court for Ramsey county by the attorney general, in the name of the state, to adjudge defendant guilty of unfair discrimination and unfair competition under Laws 1907, c. 269, and to cancel and annul the right, permit and license of defendant to do business in Minnesota, and for such further order in the premises as will give full force and effect to such cancelation.

The complaint, in addition to the allegations quoted in the opinion, alleged that defendant distributed and was still selling and distributing kerosene in the cities of St. Paul and Minneapolis at prices from one to three cents per gallon less than it had sold kerosene of the same grade, quality, kind and test in various other localities of Minnesota

to which the cost of transportation and distribution of said oil from the place of production and manufacture was the same as to the cities named, specifying certain non-competitive places where the higher prices were charged; "that in the cities of St. Paul and Minneapolis, a number of persons and corporations, competitors of defendant, keep and maintain storage tanks and tank wagons for the distribution and sale of kerosene in said cities, while in said other cities no competition exists, and the discriminations heretofore alleged have been made and are made, with the intent to destroy the business of such competitors and to create a monopoly in the business of distributing such kerosene; that the defendant by reason of its extensive system of carrying tanks, storage tanks and tank wagons extending in the distribution and sale of kerosene throughout the state of Minnesota and by reason of its unlawful discrimination in the price of kerosene between localities where there is competition and where there is not, has prevented and does prevent the investment of capital in said business and has prevented and does prevent legitimate competition in said business in the various portions of the state."

Defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and that Laws 1907, c. 269, was repugnant to section 1 of the fourteenth amendment of the federal constitution, and to section 7, of article 1 and sections 27, 33 and 34 of article 4 of the state constitution. From an order, Bunn, J., sustaining defendant's demurrer to the complaint, the state appealed. Reversed.

*George T. Simpson,* Attorney General, and *George W. Peterson,* Assistant Attorney General, for the State.

Chapter 269, Laws 1907, is general in its application to all those engaged in the production, manufacture and distribution of petroleum and its products. By petroleum and its products the legislature had in mind kerosene oil, gasolene and such oils as are distributed for commercial purposes by the tank car, storage tank and tank wagon system. It did not have in mind products of petroleum such as vaseline and chewing gum. The facts and circumstances

surrounding the business of dealers in petroleum and the products of petroleum are such that the legislature in its discretion may determine the necessities of the case and legislate against unfair competition and unfair discrimination in such business, and such legislation is not arbitrary. Chapter 269 is not class legislation and is not in violation of sections 33 and 34 of article 4 of the constitution of Minnesota. It includes all of the class. The statute in question is an amplification of the subject-matter of trusts and monopolies as defined in R. L. 1905, §§ 5168, 5169. General words are to be given limited meaning to conform to legislative intent and legislative purposes. Petri v. Commercial Nat. Bank of Chicago, 142 U. S. 644, 650; McKee v. United States, 164 U. S. 287; United States v. Trans-Missouri Freight Assn., 166 U. S. 320. It is submitted in conclusion that the primary products of petroleum, being those which do have a relation to the peculiarly competitive conditions in the petroleum industry, are within the purview of the statute, and not those by-products which bear no such relation. That is the legislative intent, it is the common and approved usage, and it is common sense. General words in a statute are inclusive, within the legislative intent; particular words are exclusive of those not expressed, hence the language of the statute.

*Stringer & Seymour, Alfred D. Eddy* and *Robert W. Stewart,* for respondent.

This action is an action of ouster. Will an action of ouster lie before conviction, before revocation by the secretary of state of the permit to do business in the state and the continuance of business after such revocation? In other words, has not this action been prematurely brought, independent of the constitutionality of chapter 269?

The defendant is a corporation created under the laws of the state of Indiana and was duly licensed to do business in the state of Minnesota. Unless there are provisions of law other than those contained in chapter 269, in order to state a cause of action the conditions precedent enumerated in the act must be alleged. The contention of appellant is, that the attorney general is authorized, in-

dependently of chapter 269, to maintain this action, and quotes sections 5168, 5169, 4544, 3174 and 58 of the Revised Laws of 1905, as constituting such authority. We submit that these sections contain no such authority as claimed by appellant. By no logical deduction can it be made to appear that the authority conferred upon the attorney general under sections 5168 and 5169 would warrant or authorize him to commence an action of ouster under chapter 269. Section 58 constitutes his authority to bring an action of ouster after the secretary of state has revoked the license and defendant has continued to do business. The other sections are not in point.

To vacate the charter of a foreign corporation, and adjudge it to be dissolved is beyond the jurisdiction of the courts of this state. It is within the power of the state, without question, to vacate and annul the permit or license to do business within the state and to punish infractions of the law of the state by such foreign corporation; but the courts of the state cannot vacate a foreign corporation's charter, nor can it adjudge such charter to be dissolved. Recognizing this limitation, in all acts concerning foreign corporations, the legislature has provided for a revocation of the permit or license to do business in the state. We submit, therefore, that an action of ouster cannot be maintained until after conviction and revocation of the permit to do business by the secretary of state.

Chapter 269 is in contravention of the provisions of the constitution of the state of Minnesota and is unconstitutional and void. Horwich v. Walker-Gordon, 205 Ill. 497; State v. Wagener, 77 Minn. 483; Nichols v. Walter, 37 Minn. 264; Johnson v. St. Paul & Duluth R. Co., 43 Minn. 222; State v. Sheriff of Ramsey County, 48 Minn. 236; State v. Cooley, 56 Minn. 540; State v. Chicago, M. & St. P. Ry. Co., 68 Minn. 381; State v. Ritt, 76 Minn. 531; Murray v. Board of Co. Commrs. of Ramsey County, 81 Minn. 359; Duluth Banking Co. v. Koon, 81 Minn. 486; State v. Walker, 83 Minn. 295; State v. Justus, 90 Minn. 474; Thomas v. City of St. Cloud, 90 Minn. 477; Webb v. Downes, 93 Minn. 457; authorities in State v. Brown, 97 Minn. 402; State v. Cudahy, 33 Mont. 179; Bedford Quarries Co. v. Bough, 168 Ind. 671, and authorities cited; Kellyville v. Harrier, 207 Ill. 624; Brown v. Jacobs, 115 Ga. 429;

Whitwell v. Continental Tobacco Co., 125 Fed. 454; State v. Haun, 61 Kan. 146; Waters-Pierce Oil Co. v. City of Hot Springs, 85 Ark. 509.

The act is in contravention of the fourteenth amendment of the constitution of the United States. Barbier v. Connolly, 113 U. S. 27; Gulf C. & S. F. Ry. Co. v. Ellis, 165 U. S. 156; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283; Missouri v. Lewis, 101 U. S. 22; Atchison T. & S. F. R. Co. v. Matthews, 174 U. S. 103; Cotting v. Kansas City Stock Yards Co., 183 U. S. 79; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 556; Halter v. Nebraska, 205 U. S. 34; State v. Scampini, 77 Vt. 92; Waters-Pierce Oil Co. v. City of Hot Springs, supra; Bedford Quarries Co. v. Bough, supra; In re Grice, 79 Fed. 627; Williamson v. Liverpool L. & G. Ins. Co., 105 Fed. 31; Whitwell v. Continental Tobacco Co., 125 Fed. 454; City of Laurens v. Anderson, 75 S. C. 62; Builders v. O'Connor, 150 Cal. 265; United States v. Trans-Missouri Freight Assn., 58 Fed. 58.

The court will take judicial notice of the legislative journal to determine the validity or construction of a public statute. When the bill for this act was originally introduced, instead of the words "the products of petroleum" it contained "any commodity in general use," similar to the Nebraska and South Dakota statutes. This bill was defeated and another bill introduced confining the operation of the bill to "lumber, iron, coal, products of petroleum," etc. It suffered the same fate as its predecessor, and finally chapter 269 was passed. The legislature singled out the dealers in the products of petroleum, on which to place the ban of the law. With commendable frankness, the attorney general in his brief states, "the act is ostensibly aimed at the defendant." He might with propriety have said, "The legislature intended, in chapter 269, to provide that, 'if the Standard Oil Company shall intentionally or otherwise, for the purpose of destroying the business of a competitor or creating a monopoly in any locality, discriminate between different sections,'" etc., "it shall be deemed guilty of unfair competition." The act of 1907 is, therefore, a special law and unconstitutional, unless it is saved

by the fact that it applies to all dealers in the products of petroleum, although it was aimed at the Standard Oil Company only.

This court will take judicial notice of the fact that, in addition to "kerosene, gasolene and such oils as are distributed for commercial purposes" more than one hundred by-products, which in value perhaps equal, if not exceed, the value of kerosene and gasolene, are sold by the defendant. It certainly is not improper to call the attention of the court to the fact that in every grocery store, in every drug store, and in every store carrying general merchandise, these products are found. It is difficult to conceive why the ban of the law should be applied to these by-products of petroleum, which are in general use throughout the country, and in every village and city in this state, and such ban should not apply to competitive products of a similar kind manufactured from other than petroleum; or why the ban of the law should apply to these products and not to the products of the mill, and loom, the mine and the farm.

There is no ambiguity in the terms of this statute. Its language expresses a simple, definite meaning and intent. To even a casual reader, its terms are clear and specific and its purpose and intent plain. If this be true, no ground for a construction of the statute exists. When the legislature has spoken in unequivocal terms, it is not in the province of the court to alter or set aside the enactment because the court may deem its provisions unwise, or because, in the judgment of the court, it may lead to harmful results. The wisdom of a statute is not a judicial question, nor can the court correct what it may deem excesses or omissions in a legislative act. If the act is constitutional and its meaning is plain, and from the language used and that only the intent of the legislature is evident, the courts have nothing to do with construction. There is no ground for construction unless there is ambiguity in the words used. Lemonius v. Mayer, 71 Miss. 514; Johnson v. Hudson River, 49 N. Y. 455, 462; McCluskey v. Cromwell, 11 N. Y. 593; Lee Bros. Furniture Co. v. Crann, 63 Conn. 433; Beaty v. Richardson, 56 S. C. 173; Nance v. Southern, 149 N. C. 366. We submit that if it is in the power of the court to restrict in their meaning the words "petroleum or any of its products" so that they shall comprehend kerosene and gasolene only,

it would be equally within the power of the legislature, if the language had been "commodities in general use," to restrict the operation of the law to kerosene and gasolene, and say that it was the intent of the legislature to have it apply to these two commodities only. In other words, if the court can strike out the words "petroleum or any of its products" and insert "gasolene and kerosene," out of this law, the court, with equal right, could strike out "commodities in general use" and insert "kerosene and gasolene" in a law prohibiting the sale of "commodities in general use" at a higher price in one city than in another. That this would be judicial legislation of the rankest kind cannot be seriously denied.

O'BRIEN, J.

In this action brought upon the relation of the attorney general, it is sought to forfeit the license to transact business in Minnesota, heretofore issued to defendant, a foreign corporation. The action is based upon an alleged violation of chapter 269, Laws 1907, entitled "An act to prohibit unfair discrimination between different sections, communities or localities, unfair competition, and providing penalties therefor." Section 1 of the act is:

"Any person, firm, company, association, or corporation, foreign or domestic, doing business in the state of Minnesota and engaged in the production, manufacture, or distribution of petroleum or any of its products that shall intentionally, or otherwise, for the purpose of destroying the business of a competitor or creating a monopoly in any locality, discriminate between different sections, communities or cities of this state, by selling such commodity at a lower rate in one section, community, or city than is charged for such commodity by said party in another section, community or city, after making due allowance for the difference, if any, in the test or quality and in the actual cost of transportation from the point of production, if a raw product, or from the point of manufacture, if a manufactured product, shall be deemed guilty of unfair discrimination, which is hereby prohibited and declared to be unlawful."

The complaint, a demurrer to which was sustained, alleged the engaging by defendant in refining, marketing, and otherwise dealing

in petroleum and its products, of which kerosene oil was one. The general method adopted by defendant for carrying on its business, it is alleged, "* * * is by means of railroad carrying tanks, in which said products are transported from the factories and refineries to the various distributing places in the state, where the same are placed in storage tanks and are thereafter distributed to the consumers and purchasers by means of tank wagons. That for a long time such has been and now is the method of defendant, and for the purposes aforesaid said defendant maintains an extensive system of carrying tanks and has storage tanks and tank wagons in the various villages, towns, and cities of the state." Then follow allegations of discrimination in the prices charged for kerosene in different localities, with intent to destroy the business of competitors and create a monopoly.

The demurrer alleged generally a failure to state a cause of action, and specially that the statute contravened provisions of the state and federal constitutions, as will be hereafter stated.

1. The statute makes it the duty of the secretary of state to revoke the permit of a foreign corporation violating the act, and to report the violations to the attorney general, whose duty it shall be to institute proceedings to oust the offender if, after the revocation, it shall continue business in the state. The defendant claims, therefore, the complaint fails to state a cause of action, in that it shows no revocation by the secretary of state, which it is insisted is a prerequisite to the bringing of this action by the attorney general.

Although a state may, when its action does not amount to an interference with interstate commerce, exclude foreign corporations from its territory, when the laws of the state provide for their admission, and a corporation complies with those regulations and pays the required fee, it secures from the state a franchise to transact business therein. A wrongful act which, if committed by a domestic corporation would render it liable to a forfeiture of its corporate existence, will render a foreign corporation committing it liable to a forfeiture of its franchise to do business in the state whose laws it violated. The duties and powers of the attorney general are similar in each instance, and while the procedure provided by

chapter 269, Laws 1907, may be followed, it is not exclusive. The constitution and laws of this state have vested in the attorney general original discretion which he may exercise in instituting proper judicial proceedings to secure the enforcement of law. State v. Robinson, 101 Minn. 277, 112 N. W. 269, 20 L. R. A. (N. S.) 1127.

2. It is argued that the act fails to conform to the requirements of section 27, article 4, of the constitution, in that, while the title refers to unfair discriminations generally, the act itself only prohibits such practices in petroleum and its products. The subject of the act is discrimination, and, while the title is broad enough to have justified an act of much wider scope, it sufficiently complies with the requirements of the organic law. Megins v. City of Duluth, 97 Minn. 23, 106 N. W. 89; Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104; State v. Porter, 53 Minn. 279, 55 N. W. 134; State v. Cassidy, 22 Minn. 312, 21 Am. Rep. 765.

3. The defendant holds its license subject to the condition that it will in the conduct of its business conform to the valid laws of the state, whether enacted before or after the issuance of the license. State v. Creamery Package Mnfg. Co., 110 Minn. 415, 126 N. W. 126. As the allegations of the complaint show a wilful violation by defendant of the law referred to, the validity of that enactment is the principal question presented by this appeal. The demurrer was sustained upon the grounds "(1) that chapter 269, Laws 1907, is repugnant to and in contravention of section 1 of the fourteenth amendment of the constitution of the United States; and (2) that said chapter 269, Laws 1907, is repugnant to and in contravention of sections 33 and 34 of article 4 of the constitution of the state of Minnesota."

We cannot better state the reasons advanced to support this holding than by quoting from the memorandum which the learned trial judge attached to his order. Amongst other things he said: "The vice in the law is that it singles out producers, manufacturers, and distributors of 'petroleum or any of its products,' and makes it a crime for such producers, manufacturers, and distributors to, for the purpose of creating a monopoly, discriminate between different sections or cities by selling petroleum or any of its products at a different price

in different sections or cities of the state, while producers, manufacturers, and distributors of all other commodities may still, for the purpose of creating a monopoly, discriminate between different sections or cities. It is worthy of note that the law applies to 'petroleum or any of its products;' that is, not only to crude petroleum, but to the refined oils, and to the hundreds of articles of common use that are products of petroleum, manufactured by different concerns, and distributed by every grocer and druggist in the state. * * * I fail to see any distinction or any reason, except a purely fanciful and illusory one, for such a classification as is made by this law. It therefore follows that the act is void, as special or class legislation."

The enactment under consideration was made under the power and duty of the legislature to enact such laws as are required for the peace, safety, health, and prosperity of the people generally, and unless beyond doubt it violates a specific provision of the state or federal constitution the only power of the court is to interpret and enforce its provisions. Lommen v. Minneapolis Gaslight Co., 65 Minn. 196, 68 N. W. 53, 33 L. R. A. 437, 60 Am. St. 450.

Courts have no voice in determining the advisability or utility of a statute; but, when it is claimed that a duly enacted law is repugnant to those constitutional provisions adopted for the beneficent purpose of preserving equality and equal privileges, it is unavoidable that the purpose and effect of the law and the necessity for its existence be taken into consideration. Municipal law is a progressive science adapting itself to conditions as they arise. The constitution was not intended to restrain a proper advance in statutory law. The strength of the federal constitution lies largely in its flexibility, and a vast array of business activities are now recognized as under its protection, the possibility of which was unknown when the constitution was adopted; and it is also true that much governmental power which has been dormant may be exercised without violence to its provisions. Conceding, in order to justify the classification of a given article of commerce, that it must possess, in itself, or in the manner in which it is put upon the market, some peculiarities not generally found, it is still the duty of the courts to enforce the statute, if investigation shows that such peculiarities may exist. If any

such distinction exists, the judgment of the lawmaking department of the state as to the necessity for special regulations is final.

There is very little, if any, conflict of authority as to the propriety of legislation providing special restrictions in selling and distributing a particular article of trade or class of articles, if such articles in themselves, the manner of their distribution, or in the particular circumstances surrounding them, may in a certain sense be deemed to be segregated from the general mass and possess some characteristics not generally found, and it cannot be doubted that as population increases, and new and improved methods of production and distribution are applied, legislation of that character must appear with greater frequency for the protection of the general public against the inclination of the individual to transact his affairs as in his judgment is best calculated to further his own interests, irrespective of the effect his conduct may have upon the public welfare. General laws to meet each condition as it arises would be necessarily so broad as to be open to many objections, and would often result in great hardship to individuals who were entirely innocent of any harmful act.

In considering the application of former decisions upon this question, it must be borne in mind that the statute here involved is effective only as to those who "shall intentionally or otherwise, for the purpose of destroying the business of a competitor or creating a monopoly in any locality, discriminate," etc. The words "intentionally or otherwise" do not qualify the purpose, so that the statute only prohibits the discrimination when made with the deliberate purpose of destroying competition. Those cases, therefore, which hold that the legislature may in its discretion, for the purpose of preventing fraud or protecting the public health, provide special regulations for the sale or distribution of particular articles, are directly in point, for preserving freedom of markets is as important as the prevention of fraud. During all time the mighty have exacted from society much more than the dishonest have purloined. State v. Duluth Board of Trade, 107 Minn. 506, 121 N. W. 395, 23 L. R. A. (N. S.) 1260.

In State v. Wagener, 77 Minn. 483, 497, 80 N. W. 633, 636, 46

L. R. A. 442, 77 Am. St. 681, a statute regulating the sale of agricultural products upon commission was sustained. Every objection which can be made against the enactment now before us could with equal force be advanced against the one there considered. Answering the claim that the law was obnoxious as class legislation, it was said: "The class is as broad as it need be. The peculiar characteristics of the agricultural products and farm produce already referred to, and the liability to peculiar abuses resulting from a sale thereof on commission, are such as to suggest the practical necessity for distinctive legislation on the subject, different from what would be expedient or necessary in the case of other property sold on commission, and to justify the legislature, in its discretion, in putting these who sell such articles on commission in a class by themselves."

This court twice determined the validity of statutes regulating the sale of baking powder. In the second instance (State v. Sherod, 80 Minn. 446, 450, 83 N. W. 417, 418, 50 L. R. A. 660, 81 Am. St. 268) it was said: "Appellants base their claim that the statute is class legislation upon the ground that it distinguishes baking powders from other well-known food products, such as butter, sugar, and flour. While there is a clear distinction between baking powders, which consist of compounds or mixtures, and the articles mentioned, which are simply primary food products, we are not prepared to say that such a statute might not be extended to include such articles, if, in the opinion of the legislature, the adulteration of those products would make it advisable. That question is not before us. But that baking powders may be treated as a class, without being subject to the objection of being class legislation, has been decided in Stolz v. Thompson, 44 Minn. 271, 46 N. W. 410."

Those cases have been selected from a long line of decisions of this court to the same effect, one of the earliest of which was Butler v. Chambers, 36 Minn. 69, 30 N. W. 308, 1 Am. St. 638, in which special regulations governing the sale of dairy products were upheld. In State v. Horgan, 55 Minn. 183, 56 N. W. 688, an act relating to imitations of butter was held valid. Stolz v. Thompson, supra; State v. Corbett, 57 Minn. 345, 59 N. W. 317, 24 L. R. A. 498; Cameron v. Chicago, M. & St. P. Ry. Co., 63 Minn. 384, 65 N. W.

111 M.—7.

652, 31 L. R. A. 553; State v. McMahon, 65 Minn. 453, 68 N. W. 77; Stewart v. Great Northern Ry. Co., 65 Minn. 515, 68 N. W. 208, 33 L. R. A. 427; State v. Smith, 58 Minn. 35, 59 N. W. 545, 25 L. R. A. 759; State v. Chapel, 64 Minn. 130, 66 N. W. 205, 32 L. R. A. 131, 58 Am. St. 524; State v. Aslesen, 50 Minn. 5, 52 N. W. 220, 36 Am. St. 620; State v. Crescent Creamery Co., 83 Minn. 284, 86 N. W. 107, 54 L. R. A. 466, 85 Am. St. 464; State v. Zeno, 79 Minn. 80, 81 N. W. 748, 48 L. R. A. 88, 79 Am. St. 422; Zenith Bldg. & Loan Assn. v. Heimbach, 77 Minn. 97, 79 N. W. 609; State v. Justus, 85 Minn. 279, 88 N. W. 759, 56 L. R. A. 757, 89 Am. St. 550; State v. State Medical Examining Board, 32 Minn. 324, 20 N. W. 238, 50 Am. St. 575; Minnesota State Pharm. Assn. v. State Board of Pharmacy, 103 Minn. 21, 114 N. W. 245; State v. Crombie, 107 Minn. 166, 119 N. W. 658; State v. Hammond Packing Co., 105 Minn. 359, 117 N. W. 606; Phelan v. Terry, 101 Minn. 454, 457, 112 N. W. 872.

As we read them, the decisions of the federal supreme court fully sustain the foregoing Minnesota cases; indeed, Butler v. Chambers and State v. Horgan were cited with apparent approval in Plumley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct. 154, 39 L. Ed. 223, although the contention there seems to be that a Massachusetts statute "to prevent deception in the manufacture and sale of imitation butter" violated the commerce clause of the federal constitution. In Otis v. Parker, 187 U. S. 606, 23 Sup. Ct. 168, 47 L. Ed. 323, it was held that a statute of California, providing "All contracts for the sales of shares of the capital stock of any corporation or association, on margin, or to be delivered at a future day, shall be void," was not invalid, because it struck "at only some, not all, of the objects of possible speculation." To the same effect are Heath & Milligan Mnfg. Co. v. Worst, 207 U. S. 338, 28 Sup. Ct. 114, 52 L. Ed. 236, upholding a statute of North Dakota regulating the sale of mixed paints, and Ozan Lumber Co. v. Union County Nat. Bank, 207 U. S. 251, 28 Sup. Ct. 89, 52 L. Ed. 195, sustaining an Arkansas statute regulating the transfer of patent rights.

The law under consideration must be regarded as one supplementary to and in aid of the statutes designed to preserve competition

generally, and if, as to this particular class of commodities, special regulations are necessary to restrain a monopoly in them, those dealing in such commodities are not denied equal privileges, but, upon the contrary, are by such special regulation placed upon an equality with dealers in other articles of commerce. State v. Chapel, supra; State v. Crescent Creamery Co., supra.

In determining the validity of the statute, we have to consider whether petroleum and its products possess, in themselves, or in the manner in which they may be placed upon the market as articles of commerce, any peculiar characteristics which furnish a legitimate reason for singling them out for the purpose of regulation, to the exclusion of other articles used for similar purposes. In determining this question we judicially note all facts of common knowledge presumably considered by the legislature when the law was enacted, and inquire whether there existed, at the time of and before the act was passed, practices in this class which were inimical to the public welfare and properly the subject of remedial legislation. We have no difficulty upon this question. Petroleum is taken from the earth in a manner peculiar to itself. The refined oil is handled as no other product. Its production and distribution have caused more legislative investigations, and been the subject of greater legal combats, in recent years, than any other article of commerce. We think it is more unique, and justifies special regulation much more, than many of the other articles as to which legislation was sustained in the cases above cited.

The public policy, not only of Minnesota, but of all the states and the federal government, is to restrain monopolies and to encourage competition. Everywhere are found laws prohibiting pools and combinations in restraint of trade. Here we have one of the principal products of petroleum, kerosene, which, it is claimed in the complaint, can be so handled by a powerful corporation that competition can be stifled without resort to either pool or combination. The complaint charges defendant discriminates in its prices for the purpose of destroying the business of its competitors, and has and does prevent legitimate competition. We are advised of no other product or article of commerce, except other petroleum oils, as to which such a practice

prevails. The demurrer admits these allegations. All these conditions were before the legislature and furnished the motive for the legislation. The classification was neither fanciful nor arbitrary, but proper and necessary to meet the peculiar conditions surrounding the distribution of these primary products of petroleum. Willis v. Standard Oil Co., 50 Minn. 290, 52 N. W. 652; Otis v. Parker, supra.

4. There is great force in the claim of counsel for the state that by petroleum and any of its products "the legislature had in mind kerosene oil, gasolene, and such oils as are distributed for commercial purposes by the tank car, storage tank, and tank wagon system," and the many by-products which are entirely disassociated in the public mind with petroleum were not intended to be included. But, if this limited intent cannot be inferred, and the act be held to include all, even the by-products of petroleum, we do not think that because of the absence of restrictions as to articles of commerce not produced from petroleum, but sold in competition with its by-products, the law is therefore unconstitutional. If the primary substance is a proper subject for classification, how can we say at just what point distinctions between its products and other commodities shall cease. No such refinement of detail is or can be required in a legislative enactment. Thus, in Heath & Milligan Mnfg. Co. v. Worst, supra, it was said (page 354 of 207 U. S., page 119 of 28 Sup. Ct. [52 L. Ed. 236]): "We have declared many times, and illustrated the declaration, that classification must have relation to the purpose of the legislature. But logical appropriateness of the inclusion or exclusion of objects or persons is not required. A classification may not be merely arbitrary, but necessarily there must be great freedom of discretion, even though it result in 'ill-advised, unequal, and oppressive legislation,' "—citing County of Mobile v. Kimball, 102 U. S. 691, 26 L. Ed. 238.

5. The complaint charges the defendant with having violated the law by unlawful discriminations in the prices charged by it for kerosene oil. Enough has been said to show that beyond all question a statute dealing only with petroleum oils would be valid. If the act embraces every by-product, and it is conceded that such by-

products are not properly subject to classification as in this act, there is presented the question:

Is a statute which would be valid if confined to one commodity inoperative when sought to be enforced only as to that one because there are included in the act other commodities as to which it is invalid? In considering this we must disregard the fact that defendant may deal in the by-products, and consider what its rights are with reference to kerosene, its conduct as to which is alone complained of. In such view we doubt the right of defendant to plead any improper inclusion in the statute of other articles, when none of such articles form the basis of the complaint. One who is deprived of no privilege will not be heard to question the validity of a statute upon the ground that it destroys the privileges of others. 8 Cyc. 791; Strauder v. West Virginia, 100 U. S. 303, 25 L. Ed. 664; State v. Currens, 111 Wis. 431, 87 N. W. 561, 56 L. R. A. 252; Brown v. Ohio Valley Ry. Co. (C. C.) 79 Fed. 176; Pittsburgh v. Montgomery, 152 Ind. 1, 49 N. E. 582, 69 L. R. A. 875, 71 Am. St. 301.

6. Statutes of this character, while enacted under the general police power, are in their nature social regulations, which may be enforced so far as the regulation attempted is not repugnant to the fundamental law, but may not be enforced beyond that point. Thus the validity of a statute establishing maximum tariffs for common carriers may depend upon the question of fact whether the enforcement of the rate will result in confiscation. Such a law has been suspended to await a period of increased earnings with the suggestion that it might then be enforced without further legislative action. Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819. This court has held that the statute abolishing the rule as to fellow servants of railroads, although general in its terms is only valid as to those railroad employees who are subject to the special hazards of railroads. Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249, 41 N. W. 974. It is also held that a city ordinance regulating the speed of trains, by its terms applicable to every portion of the city, will be held valid as applied to the populous portions and unreasonable as to the sparsely settled districts. Evison v. Chicago, St. P.,

M. & O. Ry. Co., 45 Minn. 370, 371, 48 N. W. 6, 11 L. R. A. 434. That a statute may in its entirety be in contravention of the constitution, and still contain valid and enforceable provisions, is well settled. Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 13 L. R. A. (N. S.) 932; Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382; Lee v. Tucker, 130 Ga. 43, 60 S. E. 164; Harlin v. Schafer, 169 Ind. 1, 81 N. E. 721; District of Columbia v. Green, 29 App. Cas. (D. C.) 296. The result is that the statute may be enforced as to the commodities included within its terms which are properly subject to special classification. Of those kerosene oil is one, and the only one in which the complaint charges discrimination.

7. We agree with the learned trial judge that the claimed repugnancy of the statute to sections 33 and 34, article 4, of the constitution of Minnesota, and to section 1 of the fourteenth amendment to the constitution of the United States, must be tested by the same considerations, and so have not spoken of each separately. Everything we have said also applies to the defendant's contention that the enforcement of the statute would not constitute due process of law.

Our conclusion is that the statute as here invoked and sought to be enforced is valid, and the order sustaining the demurrer is reversed.

LEWIS, J. (dissenting).

I dissent, for the reason that the decision of the majority is in conflict with two elementary rules of statutory construction: First, where a legislative act is explicit in its terms, and not ambiguous, it must speak for itself; second, when it is not ambiguous, and each part is clearly connected with and a part of the whole, it must be taken as an entirety, and is incapable of separation into divisible parts.

The title of the act is limited to the general declaration that it is an act to prohibit unfair discrimination and unfair competition between different sections, communities, and localities, and no reference is made to the real subject-matter. This is not an act prohibiting a monopoly in all articles of trade or commerce. Petroleum

and all of its products are singled out for regulation, without regard to other articles of commerce. The court must take judicial notice of the fact that there are thousands of other articles of commerce, which are packed, distributed, and sold in the same manner as many of the products of petroleum. It is a matter of common knowledge that there are a large number of products of petroleum, other than kerosene oil and gasolene, which are not stored and distributed by the tank system. Among these may be mentioned lubricating oil, axle grease, candles, vaseline, gum, and innumerable dressings and compounds well known to the trade. They are distributed in the same manner as other articles of commerce, in boxes, cans, or bottles, and are sold generally throughout the country by drug stores and retail stores. The method of packing and distribution has no tendency to prevent fair competition.

In my opinion, the act violates the rule that the classification which is the subject of legislation must not be arbitrary, but shall include all subjects naturally within it, and the law must apply equally to all members of the class. The various products of petroleum, other than kerosene and gasolene, do not in themselves constitute a proper class for legislation, because there is no natural reason suggested by necessity, or by any difference in the situation of the subject placed in the class, as suggests the necessity or propriety of different legislation with respect to the same. Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249, 41 N. W. 974. The act cannot be confined to the primary products of petroleum, viz., kerosene oil, gasolene, and other oils of similar character. No rule of construction is better established than this: When an act is expressed in terms which are plain, and not ambiguous, it must be taken in its ordinary meaning, and there is nothing to construe. There is no uncertainty or ambiguity whatever in the language of this act. All products of the substance are included, and if it had been the intention to make a distinction between the primary products and the so-called by-products, it would have been a very easy matter to so express it.

The majority practically concede that all products of petroleum are included within the meaning of the act, but invoke the rule: "One who is deprived of no privilege will not be heard to question

the validity of a statute upon the ground that it destroys the privileges of others." This rule, and the cases cited in the majority opinion in support of it, have no application to the question before the court. So the doctrine that a statute may be enforced in so far as it is valid has no application where the act is an entirety. In cases sustaining that proposition certain expressed parts · are separable and complete in themselves, and the invalid parts may be disregarded. The majority have furnished sufficient authority in support of that rule in the cases cited. Harlin v. Schafer, supra; Lee v. Tucker, supra; District of Columbia v. Green, supra. To which may be added Diamond Glue Co. v. United States Glue Co., 187 U. S. 611, 23 Sup. Ct. 206, 47 L. Ed. 328. The case of Lavallee v. St. Paul, M. & M. Ry. Co., supra, is authority for no such proposition. It was there held that chapter 13, Laws 1887, making railroad companies liable to an employee for injuries by the negligence of a coemployee, applied only to those employees engaged in operating railroads. The court held that the purpose of the act was manifest from its terms. It was for the benefit of employees engaged in the hazardous business of operating railroads, and not of employees in that part of the business not hazardous. It was apparent from the act itself that the legislature was dealing with those employees only who were engaged in dangerous work. There was no other reason for excepting in the proviso "employees while engaged in the construction of a new road, or part thereof, not open to public travel or use."

If, from the language of the act now under consideration, it was apparent that the legislature was dealing with kerosene and oils handled in a similar manner, then the principle of construction applied in the Lavallee case would be applicable. But, when the intention is plainly expressed, we are not at liberty to speculate about what the legislature may have intended. The terms of this act are explicit, and include all products of petroleum. The act is an entirety, and incapable of separation, and is an invalid law, because a wrong classification is adopted; and it cannot be made valid by excluding those products which the legislature purposely inserted. ·