STATE v. FAIRMONT CREAMERY COMPANY.[1]

August 27, 1926.

No. 25,022.

**Butter fat act of 1923 constitutional.**
> L. 1923, c. 120, defining unfair discrimination in the buying of butter fat and prescribing a penalty *held* constitutional, following State v. Fairmont Creamery Co. 162 Minn. 146.

> Commerce, 12 C. J. p. 82 n. 90 New.
> Constitutional Law, 12 C. J. p. 799 n. 66; p. 949 n. 9; p. 951 n. 41 New.
> Statutes, 36 Cyc. p. 971 n. 6 New.

Appeal by defendant from an order of the district court for Cottonwood county, Nelson, J., denying its motion for a new trial. Affirmed.

*E. J. Hainer, Leonard A. Flansburg, M. S. Hartman, Wilson Borst* and *Charles Flynn,* for appellant.

[1] Reported in 210 N. W. 163, 608.

*Clifford L. Hilton,* Attorney General, *Charles E. Phillips,* Assistant Attorney General and *Ole J. Finstad,* County Attorney, for respondent.

DIBELL, J.

The defendant was convicted of unfair discrimination in the buying of butter fat as defined by L. 1923, p. 120, c. 120, G. S. 1923, § 3907. The case was here before on certified questions. State v. Fairmont Creamery Co. 162 Minn. 146, 202 N. W. 714, 42 A. L. R. 548. This appeal is from the order denying a new trial.

The defendant cites and distinguishes Central Lumber Co. v. South Dakota, 226 U. S. 157, 33 Sup. Ct. 66, 57 L. ed. 164; State v. Bridgeman & Russell Co. 117 Minn. 186, 134 N. W. 496, Ann. Cas. 1913D, 41; State v. Standard Oil Co. 111 Minn. 85, 126 N. W. 527; State v. Fairmont Creamery Co. 153 Iowa, 702, 133 N. W. 895, 42 L. R. A. (N. S.) 821; State v. Drayton, 82 Neb. 254, 117 N. W. 768, 23 L. R. A. (N. S.) 1287, 130 Am. St. 671. The statutes involved in them, taking the Minnesota statute involved in the Bridgeman & Russell Co. case as fairly typical, and it is, make it an essential element of the offense that the prohibited sale or purchase be "with the intention of creating a monopoly or destroying the business of a competitor." The distinction between such cases and the one before us is so obvious that we need not enlarge upon it. The state does not claim that these cases sustain the constitutionality of the 1923 statute. If an offense cannot be created by statute unless such or equivalent words are used, or if the acts defined by the statute as constituting unfair discrimination cannot constitute an offense, the conclusion reached on the former appeal is in error. And this is the troublesome question. We may put aside the cases cited as of no controlling value, but useful still as ilustrative of one stage in the development of regulation and control.

The state's contention is that a particular transaction, though in it there inheres no purpose of creating a monopoly or destroying the business of a competitor, may be forbidden if the evil sought to be repressed cannot be prevented, in the fair judgment of the legislature, otherwise. It is for the legislature to find and balance evils,

and find and apply the corrective. The basis of the legislation must not be arbitrary or fanciful. The guaranteed right of contract is not absolute; but under the guise of regulation or control the legislature may not engage in arbitrary price-fixing. Examples of lawful interference with contracts, not in themselves wrongful, because recognized evils can be corrected only if such contracts are prohibited, are shown in Booth v. Illinois, 184 U. S. 425, 22 Sup. Ct. 425, 46 L. ed. 623, and Otis v. Parker, 187 U. S. 606, 23 Sup. Ct. 168, 47 L. ed. 323; and less directly in Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. 600, 40 L. ed. 793; New York ex rel. v. Hesterberg, 211 U. S. 31, 29 Sup. Ct. 10, 53 L. ed. 75; State v. Shattuck, 96 Minn. 45, 104 N. W. 719, 6 Ann. Cas. 934.

A court cannot strike down a statute unless it can say that its basis is arbitrary or fanciful, or not in good faith and on sufficient grounds directed at the evil. It is presumed that the legislature knew the facts or informed itself. So large is the dairy industry, and of so general distribution throughout the state, that most of the legislators, if they were conversant with conditions in the communities which they represented, knew at first hand the facts of production and marketing of dairy products, and the grievances at which the statute was directed. This is necessarily true of all except the members from the nonagricultural districts; and we must assume that they, if they were not possessed of competent first hand knowledge, informed themselves. We cannot say that the facts justifying such legislation did not exist. The cases are cited in the opinion on the former appeal.

The violation of the commerce clause of the Constitution is again discussed. Since the former appeal there has been decided Shafer v. Farmers Grain Co. 268 U. S. 189, 45 Sup. Ct. 481, 69 L. ed. 909. This has been considered and it does not call for a change of view.

The question of venue is the same as before and we adhere to our prior holding.

All the questions involved have been reconsidered. They are discussed in our opinion on the former appeal and we need not review them.

Order affirmed.

On October 29, 1926, the following opinion was filed.

PER CURIAM.

The defendant appeals from a judgment entered on the 22nd day of September, 1926, in the district court of Cottonwood county, finding it guilty of a violation of L. 1923, p. 120, c. 120, and adjudging it to pay a fine of $100. The judgment is affirmed upon the authority of State v. Fairmont Creamery Co. 162 Minn. 146, 202 N. W. 714, 42 A. L. R. 548, and State v. Fairmont Creamery Co. supra, page 378.